**In re GROUP DEVELOPMENT CORPORATION, Debtor.**

**GROUP DEVELOPMENT CORPORATION, Plaintiff,**

**v.**

**E.J. MANAGEMENT CORPORATION, Defendant.**

**Bankruptcy No. 83–2086. Adv. No. 84–105.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 26, 1984.

Don Stichtes, Tampa, Fla., for debtor.

## ORDER ON MOTION TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 Reorganization case and the immediate matters under consideration are (1) a Motion to Dismiss, Debtor's Complaint to Avoid Preferential Transfers and to Invalidate Security Interest, filed by the Defendant, E.J. Management Corporation (E.J. Management), (2) a Motion for Summary Judgment, also filed by E.J. Management, and (3) a Motion for Summary Judgment filed by Group Development Corporation, the Chapter 11 Debtor and Plaintiff in the above-styled adversary proceeding. This adversary proceeding was initiated by a two Count Complaint filed by the Debtor who seeks to invalidate a security interest held by E.J. Management, pursuant to § 544 of the Bankruptcy Code and to avoid a transfer which is alleged to be a voidable preference, pursuant to § 547(b).

 E.J. Management filed a Motion to Dismiss. While the Motion is ostensibly directed to the entire Complaint, it appears to address only an alleged infirmity in Count II (preferential transfer). E.J. Management contends that the Complaint fails to state a cause of action because, while the Debtor alleges that E.J. Management obtained a Final Summary Judgment for damages against the Debtor and caused "... writs to be delivered to the Sheriff of Pinellas County, commanding him to levy upon the Plaintiff's property ...," within 90 days of the Petition, the Complaint fails to allege what property was transferred to the Defendant. It is clear that in this state the execution becomes a lien on personal property from the time the writ is delivered to the sheriff, *Krauth v. First Continental Dev-Con, Inc.*, 351 So.2d 1106 (Fla. 4th DCA 1977) citing *Bank of Hawthorne v. Shepherd*, 330 So.2d 75 (Fla. 1st DCA 1976) and, pursuant to Federal Bankruptcy law, the fixing of a judgment lien upon the property of the Debtor within the 90 days preference period may constitute a transfer within the meaning of §§ 101 (41) and § 547. "It is now clear that not only any form of judgment, but any judicial proceeding that fixes a lien upon the property of the Debtor and that comes within the other requisites of § 547(b) will constitute a preference." 4 *Collier on Bankruptcy*, Para. 547.12 (15th ed. 1983). While it is true that the Debtor should have specified the property to which the Defendant's lien attached, the failure to do so does not constitute a fatal defect which warrants dismissal of the Complaint. However, in light of the treatment and disposition of the Motions For Summary Judgment, the Motion to Dismiss shall be denied.

As noted above, both the Debtor and E.J. Management filed Motions for Summary Judgment based on the contention that there are no genuine issues of material fact in dispute and the controversy should be resolved as a matter of law. The Court heard argument of counsel, considered the record and finds the following undisputed facts which are relevant and germane to the resolution of the controversy.

On May 1, 1981 E.J. Management (Management) sold to H.F. Martek & Assoc., Inc. (Martek) certain furniture, fixtures

and office equipment. As part of this transaction, Martek granted to E.J. Management a security interest in the properties transferred. On May 25, 1982 Martek transferred its interest in the same furniture and equipment to E.B. Salmon Enterprises, Inc. (Salmon), an entity separate and apart from Martek, who assumed Martek's liability from Martek to Management. The record reveals that in connection with the sale to Martek, Management did not file a U.C.C. Financing Statement with the Secretary of State in order to perfect its security interest. It further appears that Management filed a U.C.C. 1 on March 30, 1983 listing Group Development as the Debtor. It is undisputed that neither Salmon nor the Debtor ever signed a financing statement regarding the personal property in which Management claims a security interest.

On or about July 1, 1982, the Debtor failed to make the payment which then became due. As the result of the default, Management elected to accelerate the obligation. Thereafter, E.J. Management filed a civil suit for damages against the Debtor in the Circuit Court for Pinellas County, Florida (E.J. Management Corporation v. Group Development Corporation, Case No. 83–1170–7). On July 13, 1983 E.J. Management obtained a Final Summary Judgment against the Debtor for damages in the total amount of $26,773.78, and on July 26, 1983 caused a Writ of Execution to be delivered to the Sheriff of Pinellas County with respect to the goods and chattels, lands and tenements of the Debtor.

On October 7, 1983 the Debtor filed a Voluntary Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code. There is no doubt that both the entry of the Final Summary Judgment by the state court and the delivery of the Writ of Execution occurred within the 90 days period prior to the commencement of the Chapter 11 case.

It is the Debtor's position that (1) inasmuch as E.J. Management failed to properly perfect its security interest in the collateral by filing a financing statement with the Secretary of State, the Debtor is enti-

tled to invalidate the security interest pursuant to § 544 of the Code and (2) that the entry of the judgment and execution on the same, constituted transfers on account of an antecedent debt within 90 days of the petition, while the Debtor was insolvent, thereby allowing E.J. Management to receive more than it would have received under a Chapter 7 liquidation. It is Management's position that by virtue of prior judicial determination, Management has a valid enforceable security interest in the furniture and equipment, which based on the principles of res judicata, can no longer be challenged, and the Debtor's failure to challenge the validity of the security interest by raising it as a defense in the state court action, effectively bars the Debtor from attacking the validity of that interest in the Bankruptcy Court.

■ This Court is satisfied that the argument advanced by Management is without merit. Clearly, the doctrine of res judicata bars the Debtor from now raising defenses which were previously available, regardless of whether they were asserted or determined in the prior proceeding. *Brown v. Felson,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979) citing *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940). However, at the time of the state court litigation between these parties, this Debtor was not yet in bankruptcy and did not have the legal ability to raise a § 544 challenge inasmuch as § 544 is only available to a Trustee or a Debtor in Possession. Thus, it is evident that the doctrine of res judicata is inapplicable to the case at bar.

This leaves for consideration (1) whether the security interest asserted by Management is subject to avoidance pursuant to § 544(a) and (2) whether the entry of the Final Summary Judgment and Execution constitute preferential transfers which may be set aside pursuant to § 547(b).

■ This Court is satisfied that Management did not properly perfect its security interest in the subject collateral by filing on March 30, 1983, a financing statement,

which although listing Group Development as the Debtor, failed to include the Debtor's signature. Florida Statutes § 679.-402(1) provides in part that "a financing statement is sufficient if it gives the names of the debtor and the secured party *and* is signed by the debtor ...". While § 679.-402(2) provides exceptions to the rule that the Debtor's signature is required, the exceptions are inapplicable to the factual situation presented to this Court.

Nor can Management rely on the judicial lien fixed by the delivery of the writ of execution to the sheriff on July 26, 1983. As earlier noted, the Final Summary Judgment and subsequent Execution fall within the 90 days preference period, and the Court is satisfied that all other elements of a preference being present, the lien may be properly set aside. It should be recognized that Management challenges the fact of the Debtor's insolvency at the time of the transfer and directs the Court's attention to the Affidavit supporting the Debtor's Motion for Summary Judgment. The President of the Debtor stated that "at the time the Defendant caused the writ to be delivered to the sheriff; Group Development Corporation was insolvent, in that it was unable to pay its debts as they became due in the regular course of business." Of course, this is the improper test of insolvency for purposes of § 547(b), however § 547(f) provides a statutory presumption of insolvency during the 90 day preference period, which presumption has not been rebutted by Management.

Based on the foregoing, this Court concludes that the Debtor is entitled to the entry of a judgment as a matter of law.

A separate Final Judgment shall be entered in accordance with the foregoing.