In re GAYE–JOY CORP., INC., a Florida corporation d/b/a The Horse Haven, Debtor.

GAYE–JOY CORP., INC., a Florida corporation d/b/a The Horse Haven, Plaintiff,

v.

Jim and Carolyn CROW d/b/a Crowe's Roost Farm, Lee Eaton, European American Bank, Keeneland Association, Inc. and Kennedy G. Boyer d/b/a Boyer's Farm Supply, Defendants.

Bankruptcy No. 85–1000–BK–J–11.
Adv. No. 86–284.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 21, 1988.

Chester J. Trow, Ocala, Fla., for debtor.

Julian H. Kreeger, Miami, Fla., for EAB.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon confirmation of the Debtor's Second Amended Plan of Reorganization and upon the Amended Complaint of the Plaintiff, GAYE–JOY CORP., INC. ("Gaye–Joy" or "Debtor"). The complaint seeks a determination of the validity, priority and extent of EUROPEAN AMERICAN BANK'S ("EAB") interest in a horse known as the Solar Topic/Kirtling colt. EAB has filed a counterclaim in that action and an objection to confirmation in the main case stating that the Debtor has no ownership interest in the colt.

On December 10, 1987, the Court held a consolidated hearing in which both matters were heard. Upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The Plaintiff, GAYE–JOY, INC., is a closely held family corporation involved in the business of breeding and training thoroughbred race horses.

2. The principals of the corporation are Johnson E. Davis and Dorothy C. Davis. Mr. Davis is an attorney and serves as Gaye–Joy's Chairman of the Board. His wife Dorothy serves as its President. Mr. and Mrs. Davis are also known to do business under the name "The Horse Haven."

3. On August 10, 1983, Mr. and Mrs. Davis entered into a loan agreement with EAB wherein they granted Thoroughbred Equity Company, Inc. and EAB a security interest in four horses, including the Solar Topic/Kirtling foal.

4. Mr. and Mrs. Davis apparently signed this security agreement in their individual capacity and as owners of "The Horse Haven" as no indication to the contrary can be found. Furthermore, Mr. and Mrs. Davis warranted within the terms of the security agreement that they owned the horses free and clear of all other liens.

5. On or about July 1, 1982, Mr. and Mrs. Davis had prepared a personal financial statement in which they claimed ownership in certain livestock having a value of $5,500,000.00 (Defendant's Exhibit 13–A).

6. On or about April 15, 1983, Mr. and Mrs. Davis again executed a personal financial statement and claimed $7,000,-000.00 worth of livestock as their own. (Defendant's Exhibit 20).

7. A third personal financial statement prepared on or about June 15, 1984, shows Mr. and Mrs. Davis claiming $6,000,000.00 worth of livestock in their individual capacity. (Defendant's Exhibit 25).

8. Coinciding with the personal financial statement prepared for Mr. and Mrs. Davis on June 15, 1984 was a financial statement of Gaye–Joy, Inc. (Defendant's Exhibit 26). This corporate statement does not indicate ownership of any livestock and the word "Condo" appears in the space under the heading "Other Assets."

9. The individual tax return for 1983 filed by Mr. and Mrs. Davis also shows that they owned the horses individually. Specifically, the tax return shows a loss of $969,-154.00 resulting from the operations of "The Horse Haven." (Defendant's Exhibit 3).

10. Similarly, tax returns for 1981 and 1982 filed by Mr. and Mrs. Davis show losses resulting from the operations of "The Horse Haven" and fail to mention any connection with Gaye–Joy. (Defendant's Exhibits 1 & 2).

11. In addition to these occurrences, Mr. and Mrs. Davis commenced an action in 1984 against EAB in the United States District Court for the Southern District of Florida. *See Johnson E. Davis and Dorothy C. Davis v. European American Bank*, Case No. 84–1201–CIV–ARONO-VITZ. This action was based upon the claim by the plaintiffs that they were the owners of the horses and operation known as "The Horse Haven." Throughout the course of that trial, Mr. Davis has consistently maintained and testified under oath that all of the horses were owned by him and his wife individually. Mr. Davis also produced numerous tax returns, documents and correspondence to support his claim that the horses and operation of "The Horse Haven" were owned by the plaintiffs individually.

12. On November 5, 1985, the Debtor filed a petition under Title 11 Chapter 11. 11 U.S.C. § 101 *et seq.* The Debtor did not list any horses as being owned by the corporation in its schedules of assets and liabilities.

13. On March 18, 1987, the Debtor filed its Second Amended Plan of Reorganization. The plan declares it is to be funded in part by the sale of certain assets, namely horses. EAB filed an objection to the amended plan arguing that the Debtor had no interest in the horses, particularly the Solar Topic/Kirtling colt.

14. On July 16, 1986, the Debtor filed Adversary Proceeding Number 86–284 in this Court against the Defendant to determine the validity, priority and extent of EAB's interest in the Solar Topic/Kirtling colt. The trial of this proceeding was con-

solidated with the confirmation hearing as it related to the ownership of the horse.

15. At no time prior to the commencement of this adversary proceeding did the Debtor corporation register the name "Horse Haven" under Florida's Fictitious Name Law.

16. The evidence shows that Mr. and Mrs. Davis personally registered the fictitious name "Horse Haven" with the Division of Pari–Mutuel Wagering of the Florida Department of Business Regulation.

17. The Court finds no evidence to support that any horses were transferred from Johnson E. Davis and Dorothy C. Davis to the Debtor corporation.

## CONCLUSIONS OF LAW

1. A corporation is a distinct legal entity separate and apart from that of its owners. *See American States Insurance Co. v. Kelley,* 446 So.2d 1085, 1086 (Fla. 4th DCA 1984); *Hanisch v. Clark,* 200 So.2d 601 (Fla. 3d DCA 1967). Thus, property held by the shareholders individually cannot be considered an asset of the corporation, even where relatively few shareholders are involved.

2. In this case, the Debtor's principals are attempting to overcome personal liability on certain debts by claiming that certain horses are instead owned by the debtor corporation. However, the record fails to substantiate such a conclusion as Mr. and Mrs. Davis have on numerous occasions held themselves out to be the true owners of the horses. Specifically, they have claimed personal ownership of the horses in various financial statements, tax returns, racing permit applications, and in related court proceedings.

3. Obviously, Mr. and Mrs. Davis incorporated Gaye–Joy to enjoy limited liability on certain debts associated with the operations of a horse farm. However, because they could not realize the tax shelter benefits of operating a horse farm under corporate ownership, they elected to retain title to the horses in their own names. Such an arrangement is not uncommon; however, having made such an election, they are obligated to follow corporate formalities and to observe the legal distinction between entities. They could not elect to ignore the corporate structure for tax benefits on one occasion and then claim its protection the next. *See e.g., In re Rodriquez,* 24 B.R. 12, 14 (Bkrtcy.S.D.Fla.1982) ("A person will not be permitted to do business in corporate form and obtain all the benefits thereof, and then ignore the corporate form when it no longer suits his purposes.")

4. Having claimed personal ownership of the horses in the past, it was therefore incumbent upon Mr. and Mrs. Davis, as officers of the corporation, to meet EAB's challenge and to provide documentation or some other evidence of the transfer of horses to the corporation. This they failed to do. Therefore, the Court must conclude that EAB has succeeded in showing that the Debtor has no interest in the subject horses.

5. The Court finds further that the assertion by Mr. and Mrs. Davis that the corporation owned the horses is barred by the doctrine of judicial estoppel. That doctrine provides that a party is precluded as a matter of law from adopting a legal position which conflicts with an earlier position taken in the same or related litigation. Its purpose is to prevent a party from "playing fast and loose" with the courts and to protect the essential integrity of the judicial process. *See Allen v. Zurich Insurance Co.,* 667 F.2d 1162, 1166–67 (4th Cir. 1982); *United Virginia Bank v. B.F. Saul Real Estate Investment Trust,* 641 F.2d 185, 190 (4th Cir.1981). Since they have claimed personal ownership of the horses in a related proceeding in the Southern District of Florida, the doctrine of judicial estoppel would apply to prohibit their now contrary position.

7. Having found that the Debtor has no interest in the subject horses, the Court will enter a separate final judgment in the adversary proceeding in favor of the Defendant, European American Bank. Because the Debtor's plan of reorganization is predicated upon the sale of this and other

horses, the Court will also enter a separate order denying confirmation of the plan.