**In re MICHELLE'S HALLMARK CARDS & GIFTS, INC.,**
Debtor.

**Gregory K. CREWS, Trustee, Plaintiff,**

v.

**FIRST UNION NATIONAL BANK OF FLORIDA, N.A., Defendant.**

**Bankruptcy No. 96–3658–3P7.**
**Adversary Nos. 97–008, 97–211.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 16, 1998.

Sandra C. Kahle, Jacksonville, FL, for Plaintiff.

Douglas H. Morford, Jacksonville, FL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

These proceedings are before the Court upon Complaints filed by Gregory K. Crews, Trustee (Plaintiff), and were consolidated for trial conducted on November 26, 1997. Through the Complaint filed in adversary

proceeding 97–008, Plaintiff seeks to determine the validity, priority, and extent of First Union National Bank of Florida, N.A.'s (Defendant), lien on the proceeds from the plaintiff's sale of inventory, furniture, fixtures, and equipment of Michelle's Hallmark Cards & Gifts, Inc. (Debtor). In adversary proceeding 97–211, the plaintiff seeks to recover as fraudulent conveyances money received by Defendant during the year preceding the debtor's petition and during the pendency of the case. Upon the evidence presented at trial the Court enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. On July 13, 1993, Dale E. Rix and Lynn W. Rix (Borrowers) entered into an agreement with Ann C. Russell (Russell) to purchase the assets of Ann's Hallmark, a Florida corporation located at 900–2 Dunn Ave., Jacksonville, Duval County, Florida. (Pl. Ex. 4.) The purchase price for the assets was $95,000, $60,000 of which was to be obtained by loan from an institutional lender. (Id.)

2. On July 28, 1993, Borrowers executed a Loan Commitment and Agreement, pursuant to which Defendant agreed to loan Borrowers $60,000 to purchase Ann's Hallmark Card and Gift Shop. (Def. Ex. 2.)

3. The terms of the loan provided that the loan would be secured by a first lien security interest in the borrowers' Hallmark Card and Gift Shop's furniture, fixtures, equipment and inventory (collateral). (Id.)

4. Borrowers executed two promissory notes in favor of Defendant.

5. The first, entitled Negotiable Promissory Note, dated July 28, 1993, lists Dale E. Rix and Lynn W. Rix D/B/A Michelle's Hallmark Card and Gift Shop (the Proprietorship) as the borrowers. (Pl. Ex. 1.) The note details the terms of the loan and purports to grant Defendant a security interest in the collateral described on "Attached Schedule A". (Id.) However, no schedule is attached to the note. The note does state that a security interest in "the goods or property being purchased" is being granted. (Id.) The note is signed by Borrowers in their individual capacities. (Id.)

6. The second note, entitled Promissory Note and Security Agreement, and also dated July 28, 1993, lists Lynn W. Rix and Dale E. Rix as the borrowers. (Pl. Ex. 2.) This note also purports to grant Defendant a security interest in the collateral listed and described on an attached Schedule A. (Id.) Again, however, no schedule is attached to the note. The note provides that it is subject to the terms and conditions of the commitment letter between the Borrowers and Defendant. (Id.) The note is signed by Borrowers in their individual capacities. (Id.)

7. On July 29, 1993, an Addendum to the Offer for Purchase and Sale of Assets, dated July 13, 1993, was executed by Russell and Borrowers. (Def. Ex. 7.) The addendum provides the following allocation of values:

| $55,000 | Inventory |
| $39,000 | F, F, E |
| $500 | Goodwill |
| $500 | Non-compete |
| $95,000 | Total |

(Id.)

8. However, on July 30, 1993, a Seller's Closing Statement, executed by Russell on behalf of Ann's Card & Gift Shoppe, Inc., lists the property sold to Borrowers as "500 shares of Ann's Card & Gift Shoppe, Inc., and business known as Ann's Hallmark Card & Gift Shoppe." (Def. Ex. 8.) The sale of the 500 shares of stock to the Borrowers is evidenced by a stock certificate duly endorsed by Russell. (Pl.Ex.8.)

9. Also on July 30, 1993, Russell, on behalf of Ann's Card & Gift Shoppe, Inc., executed a Bill of Sale in favor of Borrowers, evidencing the sale of personal property described as:

All of the equipment, fixtures, goodwill, inventory, accounts receivable, trade marks, trade names, lease and other intangible assets of that certain business known as ANN'S HALLMARK CARD & GIFT SHOPPE, located at 900-02 Dunn Avenue, Jacksonville, Florida 32218, including but

not limited to the assets shown on Exhibit "A" attached hereto.[1]

(Def. Ex. 5.) A Corporate Certificate authorizing the sale of the assets of Ann's Card & Gift Shoppe, Inc., to Borrowers was executed by Russell on behalf of the corporation. (Def. Ex. 6.)

10. On September 20, 1993, Defendant filed a UCC–1 Financing Statement with the Secretary of State, State of Florida. (Def. Ex. 4.) The financing statement lists Lynn W. Rix and Dale E. Rix D/B/A Michelle's Hallmark Cards and Gift Shop FKA Ann's Hallmark Shoppe as the debtor. (*Id.*) The financing statement purports to cover the following types or items of property:

All inventory of Debtor whether now owned and hereafter acquired, all goods held for sale. Also, all furniture, fixtures, and equipment located at Michelle's Hallmark Card and Gift Shop, 900–02 Dunn Avenue, Jacksonville, Florida. All additions and accessions thereto, and proceeds and products of all the foregoing collateral.

(*Id.*)

11. Of the $95,000.00 sales price, Russell received $60,048.12 in the form of a check made payable to the order of Ann's Card & Gift Shoppe, Inc. (Def. Ex. 9.)

12. The check was funded with the loan proceeds from the defendant, and was cashed by Russell.

13. Twenty-six thousand two hundred sixty-two dollars and twenty-two cents ($26,262.22) of the sales price was paid by Borrowers directly to Hallmark for a debt owed by Ann's Card & Gift Shoppe, Inc.

14. Sometime following closing, the name of Ann's Hallmark Card & Gift Shoppe, Inc., was changed to Michelle's Hallmark Cards and Gifts, Inc.

15. Debtor filed a Chapter 11 petition on June 18, 1996. The case was converted to Chapter 7 on December 4, 1996, and Plaintiff is the Chapter 7 trustee.

16. Plaintiff initiated adversary proceeding 97–008 on January 16, 1997. Plaintiff asserts that Defendant does not have a security interest in the collateral, and that even if a security interest does exist, that interest is not perfected.

17. In adversary proceeding 97–211, filed on June 17, 1997, Plaintiff alleges that loan payments made by the debtor to the defendant within the year preceding the debtor's petition are avoidable pursuant to 11 U.S.C. § 548(a)(2) because the debtor received less than a reasonably equivalent value in exchange for the payments.

18. Plaintiff further alleges that payments totaling $4,241.76, which were made while the Chapter 11 case was pending, are recoverable pursuant to 11 U.S.C. § 549(a) because the transfers were unauthorized.

### CONCLUSIONS OF LAW

#### I. Validity, Priority, and Extent of Defendant's Lien

##### A. Security Agreement

The threshold question for the Court is whether Defendant has a valid and perfected security interest in the debtor's furniture, fixtures, equipment, and inventory. A security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation". Fla.Stat.Ann. § 671.201(37) (West 1998). Under Florida's Uniform Commercial Code, a security interest is legally enforceable and attaches if:

(1) the secured party possesses the collateral or the debtor has signed a security agreement containing a description of the collateral; and

(2) value has been given by the secured party; and

(3) the debtor has rights in the collateral.

Fla.Stat.Ann. § 679.203(1) (West 1998).

The collateral in question was at no time in the possession of the defendant; therefore, in order for an enforceable security interest to exist there must be a writing signed by the debtor which includes a description of the collateral. The security agreement involved in these proceedings is signed by the Borrowers, individually, but not by the debtor.

---

1. No "Exhibit A" is attached to the Bill of Sale entered into evidence as Defendant's Exhibit 5.

Since the debtor never signed a security agreement, the formal, statutory prerequisites for a security interest have not been met.

■ The terms of the security agreement executed by the Borrowers, however, provide as follows: "[A]ll obligations of borrower shall bind his heirs, executors, administrators, successors and/or assigns." (Pl. Ex. 2 at 2, ¶ 2). The Court finds that the debtor corporation is, in effect, the successor of the Borrowers' proprietorship and concludes that the security agreement executed by the Borrowers is binding on the debtor corporation to the same extent it was originally binding on the Borrowers.

In addition to the lack of the debtor's signature, the plaintiff attacks the validity of the security agreement executed by the Borrowers on the grounds that the description of the collateral is not sufficiently specific. If so, the security interest purportedly created by the agreement was never enforceable against the proprietorship, and consequently cannot be enforced against the debtor, as the proprietorship's successor.

■ Florida law requires that a description of personal property reasonably identify what is described. Fla.Stat.Ann. § 679.110 (West 1998). There is no requirement that the description be specific. Moreover, if the parties to the agreement understand what collateral was pledged, the security interest created by the agreement cannot be challenged on the basis of an insufficient description of the collateral. *Ford v. Feldman, M.D., P.A. (In re Florida Bay Trading Co.)*, 177 B.R. 374, 381 (Bankr.M.D.Fla.1994).

■ The document entitled "Security Agreement" does not include a description of the collateral. The document refers to a list of collateral on attached Exhibit A, which is in fact not attached. The omission of the description in the document entitled "Security Agreement" is not fatal, however. A security agreement may be embodied in multiple documents. *In the Matter of The Kids Stop of America, Inc.*, 64 B.R. 397, 399 (Bankr. M.D.Fla.1986). The Court may therefore consider each of the relevant loan documents

to determine whether they cumulatively comprise an enforceable security agreement.

Although the security agreement itself does not describe the property pledged as collateral, the security agreement does refer to the commitment letter which specifies that the security for the loan is the furniture, fixtures, equipment, and inventory of the Borrowers' proprietorship. (Def. Ex. 2.) In addition, the promissory note executed simultaneously with the security agreement states that a security interest in the goods or property being purchased is being granted. (Def. Ex. 3.) It is clear that the Borrowers and Defendant understood what property was being purchased, and were in agreement as to the nature of the collateral for the loan.

The court finds that the description of the collateral in the loan documents executed by the Borrowers is sufficient to fulfill the reasonable identification standard contained in Florida Statutes § 679.110. Consequently, a valid security agreement exists between the debtor, as the proprietorship's successor, and the defendant.

### B. The Financing Statement

■ The plaintiff argues that even if the security agreement between the defendant and Debtor is enforceable against the debtor, the defendant still does not hold a valid security interest in the subject collateral because the security interest was not perfected.

A financing statement, with certain exceptions not relevant herein, must be filed to perfect all security interests. Fla.Stat.Ann. § 679.302(1) (West 1998). Although Defendant did file a financing statement, the plaintiff questions whether the filed financing statement fulfills the formal statutory requisites of Florida Statutes § 679.402. The statute requires that a financing statement contain the names of the debtor and the secured party, be signed by the debtor, give an address of the secured party, give a mailing address of the debtor, and contain a statement indicating the types, or describing the items, of collateral. Fla.Stat.Ann. § 679.402(1) (West 1998). The statute also provides that so long as the financing statement substantially complies with the requirements of § 679.402, it is effective notwithstanding minor errors which are not

seriously misleading. Fla.Stat.Ann. § 679.402(7) (West 1998.).

The difficulty in this proceeding concerns the distinction between the Borrowers and the corporate debtor. A corporation is a "distinct legal entity separate and apart from that of its owners", *Gaye–Joy Corp., Inc. v. Crow (In re Gaye–Joy Corp., Inc.),* 84 B.R. 235, 237 (Bankr.M.D.Fla.1988), notwithstanding the borrowers' or Defendant's failure to recognize this distinction.

■ The financing statement filed by the defendant with the Secretary of State was filed under the Borrowers' names, doing business as the proprietorship. (Def. Ex. 4.) Florida law provides that a financing statement "sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor...." Fla. Stat.Ann. § 679.402(6) (West 1998). This Court has previously stated its view that the filing of a financing statement under a name other than the debtor's is a major error, and is seriously misleading. *Grant v. Citizens First Bank of Ocala (In re Eisaman),* 90 B.R. 528, 531 (Bankr.M.D.Fla.1988). The Court finds that the financing statement at issue fails to comply with section 679.407, and holds that the filing of the financing statement under a name other than the corporation is a seriously misleading error which renders the statement ineffective to perfect Defendant's security interest.

Florida Statutes § 679.402 specifically requires that the financing statement show the corporate name of the debtor for a reason: notice. A statement filed under an incorrect name defeats the purpose of the statute. A reasonable prudent search for a financing statement under the name "Michelle's Hallmark Cards & Gifts, Inc." would not reveal the financing statement listing the Borrowers doing business as the proprietorship as the debtor. To hold that the statement is effective notwithstanding the erroneous filing

would erode the policy supporting the requirement for a publicly filed financing statement.

■ The Defendant urges the Court that the financing statement was sufficient to perfect its security interest because it clearly states that the security interest was being taken in the collateral located at Michelle's Hallmark Card & Gift Shop. However, unless specifically included in the debtor's box, the mention of the debtor's name elsewhere in the financing statement is irrelevant. The filing officer is only required to look to the debtor box when indexing the financing statement. *In re Walker,* 142 B.R. 482, 484 (Bankr.M.D.Fla.1992) (citing *In re Levins,* 7 UCC Rep. 1076, 1082 (1970)).

■ The burden rests with the secured party to provide an accurate name on the financing statement, and that party must bear the loss if an improper name is provided. *Id.* In the instant proceeding, therefore, the defendant must bear the loss of an unperfected security interest as a result of its failure to file the financing statement in the debtor's name. Had the defendant originally perfected its security interest by filing the subject financing statement prior to the debtor's change to a corporate form, Florida Statutes § 679.402(6) may have provided for the perfection of defendant's security interest until four months following the change .[2] However, no evidence was presented demonstrating that the original financing statement was perfected against the proprietorship prior to its change to a corporate form.

■ The financing statement at hand is not only deficient in that it contains the debtor's incorrect name, but it also fails to meet the remaining requirements of § 679.402(1). In addition to failing to list the correct debtor, the financing statement lists the Borrowers' home address as the debtor's address, rather than the address of the corporation. Moreover, the debtor's signature

**2.** Florida Statutes § 679.402(6) provides in relevant part as follows:

Where the debtor so changes his name or in the case of an organization its name, identity, or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security inter-

est in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time, in which case the new filing shall continue the priority of the original filing.

Fla.Stat.Ann. § 679.402(6) (West 1998).

is omitted from the statement. The statement is not signed on behalf of the debtor by one of its representatives, but is signed by the Borrowers in their individual capacities. "Under Florida law, the failure to include debtor's signature on the financing statement results in an unperfected security interest...." *Lyn–Dee Dairy Farm, Inc. v. Schafsma (In re Lyn–Dee Dairy Farm. Inc.);* 97 B.R. 95, 97 (Bankr.M.D.Fla.1989) (citing *In re Group Development Corp.,* 43 B.R. 665 (Bankr.M.D.Fla.1984)).

The Court concludes that the defendant's security interest in the collateral remains unperfected due to the financing statement's noncompliance with the statutory requirements of Florida Statutes § 679.402. Consequently, the plaintiff has priority over Defendant's security interest pursuant to 11 U.S.C. § 544(a)(1).

## II. Fraudulent Transfer

The plaintiff seeks to avoid transfers totaling $10,742.42 made by the debtor to the defendant, representing loan payments made within the year preceding the filing of Debtor's bankruptcy petition. Plaintiff relies on 11 U.S.C. § 548 in seeking avoidance of the transfers. That section provides in pertinent part:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . .
>
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>
> (iii) intended to incur, or believed that the debtor would incur, debts that would

be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a) (1998).

In its Answer, the defendant admits that at the time of the disputed payments the debtor was insolvent, or became insolvent as a result of those payments. (Def.'s Answer ¶ 1.) The remaining issue is whether the debtor received less than a reasonably equivalent value in exchange for the loan payments. The burden of proving that the debtor did not receive a reasonably equivalent value rests with the plaintiff. *Grant v. Sun Bank/North Central Florida (In re Thurman Constr., Inc.),* 189 B.R. 1004, 1015 (Bankr. M.D.Fla.1995) (citing *In re Chase & Sanborn Corp.,* 904 F.2d 588, 593–94 (11th Cir.1990)).

These proceedings are complicated by the failure of the Borrowers to treat the debtor as an entity separate and distinct from themselves as individuals. Although the name of the debtor reflects its corporate status, its business dealings do not. The evidence before the Court indicates that the debtor did not even have its own bank account. A checking account was maintained by the Borrowers, d/b/a the proprietorship, from which, presumably, the loan payments were made. However, in its Answer, the defendant admits receiving transfers of property from the debtor totaling $10,747.42. (Def.'s Answer ¶ 1.) Therefore, the Court will treat payments in that amount as having come directly from the debtor and will proceed to resolve the reasonably equivalent value issue.

The inquiry concerning § 548(a)(2)(A) addresses whether the debtor gained a value reasonably equivalent to the disputed payments made to the defendant. *Beemer v. Walter E. Heller and Co. (In re Holly Hill Medical Center, Inc.),* 44 B.R. 253, 254 (Bankr.M.D.Fla.1984). A transfer may not be avoided pursuant to § 548 if an economic benefit, either direct or indirect, is conferred upon the debtor. *In re Thurman Constr., Inc.,* 189 B.R. at 1015 (citing *In re Rodriguez,* 895 F.2d 725, 727 (11th Cir. 1990)).

This Court has previously cited with approval a case originating in the Southern District of Ohio, which is directly analogous

to the proceeding at bar. *See Hall v. Arthur Young and Co. (In re Computer Universe, Inc.)*, 58 B.R. 28, 31 (Bankr.M.D.Fla.1986) (citing *In re Evans Potato Co., Inc. (Butz v. Sohigro Service Co.)*, 44 B.R. 191 (Bankr. S.D.Ohio 1984)). In *Evans Potato Co.*, the court held that a debtor corporation had received fair consideration (or reasonably equivalent value) for payment of its principal's debt because it had exclusive use of the goods purchased. *In re Evans Potato Co., Inc.*, 44 B.R. at 194. The same is true in the instant proceeding, and the Court finds that the debtor received a reasonably equivalent value for the prepetition payments it made to the defendant within the year preceding its petition. The equivalent value was the use and availability of the property purchased with the defendant's loan proceeds by the Borrowers.

Although the payment of a shareholder debt is generally avoidable by the trustee, an exception to this general rule arises when the debtor receives the benefit of the original consideration. *In re Computer Universe, Inc.*, 58 B.R. at 30–31. This exception is applicable in this proceeding because the debtor received the benefit of the exclusive use of the collateral for which it made payments to the defendant.

The plaintiff argues that the debtor did not benefit from the original consideration (the loan proceeds) because the debtor held the same assets before and after the sale. However, following the sale, title to the collateral sale resided in the Borrowers, individually. This Court has previously expressed its view that property belonging to individual shareholders cannot be considered property of a corporation, regardless of the number of shareholders in the corporation. *Gaye–Joy Corp., Inc, v. Crow (In re Gaye–Joy Corp., Inc.)*, 84 B.R. 235, 237 (Bankr.M.D.Fla.1988). Consequently, the debtor did not hold the assets before and after the sale. The debtor benefitted from the loan proceeds because, as the proprietorship's successor, it ultimately

possessed the collateral and utilized it in its business.

Although Plaintiff has met his burden of proof respecting the insolvency requirement of § 548(a), he has failed to establish a lack of a reasonably equivalent value. Because the criteria of § 548(a)(2)(A) and (B) are stated in the conjunctive, the plaintiff cannot avoid the transfers made by the debtor to the defendant prepetition.

### III. Postpetition Transfers

 The plaintiff seeks to avoid the transfer of payments totaling $4,241.76, made by the debtor to the defendant following the filing of debtor's Chapter 11 case, but preceding the conversion of that case to Chapter 7. The plaintiff relies on 11 U.S.C. § 549(a), which establishes that the trustee may avoid a transfer of property of the estate:

(1) that occurs after the commencement of the case; and

. . .

(2)(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a) (1998).

Because the trustee has priority over the defendant's security interest, postpetition payments to the defendant are unauthorized under the Bankruptcy Code. Furthermore, the payments were not authorized by this Court because an order entitling the defendant to adequate protection was never issued.

The Court holds that the plaintiff may avoid the postpetition transfer of funds by the debtor to the defendant pursuant to § 549, and may recover $4,241.76 from the defendant by operation of 11 U.S.C. § 550.[3]

### IV. Conclusion

The Court concludes that the plaintiff has priority over Defendant's unperfected security interest in the proceeds of Plaintiff's sale of the subject collateral. Although the plaintiff is not entitled to recover the loan pay-

---

**3.** 11 U.S.C. § 550 provides as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made....

11 U.S.C. § 550(a) (1998).

ments made by the debtor to the defendant prepetition, he may recover those payments made postpetition. Separate judgments consistent with these Findings of Fact and Conclusions of Law will be entered by the Court.