**In re GULF NORTHERN TRANSPORT, INC., et al., Debtors.**

**Lloyd T. Whitaker, Chapter 7 Trustee, Plaintiff,**

v.

**Volvo Commercial Finance, LLC, the Americas, a limited liability company, Defendant.**

**Bankruptcy No. 00–9224–3F7 to 00–9227–3F7.**
**Adversary No. 02–338.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 11, 2005.

788

John B. Macdonald, Jacksonville, FL, for Plaintiff.

Walter L. Sanders, Miami, FL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court upon a complaint seeking to avoid pursuant to 11 U.S.C. §§ 548(a)(1)(A)(Count I) and 548(a)(1)(B)(Count II) certain transfers from Debtor to Defendant. The Court conducted a trial on October 21, 2004. In lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective positions. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Danny Pixler ("Pixler") was the president of U.S. Trucking, Inc., which was the parent of Gulf Northern Transport, Inc. ("Debtor"). On or about March 5, 1998 Pixler entered into a lease agreement (the "Pixler lease") with Debtor for the lease of two Volvo trucks more particularly described as: 1) a 1995 Volvo, VIN No. 4V1WDBRH1SN686401 ("Unit 9526") and 2) a 1995 Volvo, VIN No. 4V1WDBRH3SN686402 ("Unit 9527"). (Pl.'s Ex. 4.) The monthly lease payment was $2,598.00. (Id.) Paragraphs two and four of the Pixler lease respectively provide that "[Debtor] shall have exclusive possession, control, and use of [Units 9526 and 9527]" and "shall pay [Pixler] for the use of [Units 9526 and 9527]." (Id.) On or about June 26, 1999 Pixler entered into a Master Loan and Security Agreement (the "Pixler loan") with Defendant by which he obtained a loan against Units 9526 and 9527. (Pl.'s Ex. 2.) The monthly contract payment was $2,598.82. (Id.)

Michael Menor ("Menor") was the vice president of Debtor. On or about March 5, 1998 Menor entered into a lease agreement (the "Menor lease") with Debtor for the lease of two Volvo trucks more particularly described as: 1) a 1995 Volvo, VIN No. 4V1WDBRHXSN686400 ("Unit 9524") and 2) a 1995 Volvo, VIN No.

4V1WDBRH2SN686407 ("Unit 9525"). (Pl.'s Ex. 5.) The monthly payment was $2,598.00. (Id.) On or about June 26, 1999 Menor entered into a Master Loan and Security Agreement (the "Menor loan") with Defendant by which he obtained a loan against units 9524 and 9525. (Pl.'s Ex. 3.) The monthly contract payment was $2,598.82. (Id.) Units 9524, 9525, 9526, and 9527 are the same year, make, and model.

Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 30, 2000 (the "Petition Date"). Plaintiff was appointed as the Chapter 11 Trustee on December 1, 2000. On June 5, 2001 the case was converted to Chapter 7 and Plaintiff was subsequently appointed to serve as the Chapter 7 trustee.

During the one year period prior to the Petition Date, the Debtor made the following eleven transfers (the "Transfers") totaling $36,382.28 [1] by written checks to Defendant, which checks were negotiated by Defendant and ultimately paid by the Debtor's bank.

| Date of Check | Check No. | Date Check Honored | Payee | Amount |
| --- | --- | --- | --- | --- |
| 17–Jan–00 | 9837 | 28–Jan–00 | Volvo Financial | $10,394.08 |
| 2–Mar–00 | 10851 | 7–Mar–00 | Volvo Financial | 2,598.82 |
| 2–Mar–00 | 10852 | 7–Mar–00 | Volvo Financial | 2,598.82 |
| 17–Mar–00 | 11412 | 21–Mar–00 | Volvo Financial | 2,598.82 |
| 17–Mar–00 | 11413 | 21–Mar–00 | Volvo Financial | 2,598.82 |
| 12–Apr–00 | 12105 | 2–May–00 | Volvo Financial | 2,598.82 |
| 12–Apr–00 | 12114 | 3–May–00 | Volvo Financial | 2,598.82 |
| 20–Jun–00 | 13762 | 29–Jun–00 | Volvo Financial | 2,598.82 |
| 20–Jun–00 | 13763 | 29–Jun–00 | Volvo Financial | 2,598.82 |
| 26–Jun–00 | 13826 | 22–Aug–00 | Volvo Financial | 2,598.82 |
| 26–Jun–00 | 13827 | 22–Aug–00 | Volvo Financial | 2,598.82 |

(Pl'.s Ex. 1)

The Transfers represented payments on the Pixler and Menor loans. The dates upon which the checks were paid for Defendant's benefit by Debtor's bank encompass the period from January 28, 2000 to August 22, 2000 (the "Transfer Period"). (Id.)

Plaintiff testified that Debtor was not a party to the Pixler and Menor loans, did not guarantee the indebtedness under the Pixler and Menor loans, and did not receive any portion of the Pixler and Menor loan proceeds.

Plaintiff testified (and the Court finds) that Debtor's dispatch records constitute the best evidence of Debtor's use of the four trucks. Debtor's dispatch records indicate that Debtor did not use Unit 9524 at any time during the Transfer Period. (Pl.'s Ex. 6.) Debtor's dispatch records indicate that Debtor used Unit 9525 from January 11, 2000 to January 14, 2000, from January 16, 2000 to January 20, 2000, from January 24, 2000 to February 1, 2000, and from February 4, 2000 to February 8, 2000. (Pl.'s Ex. 7.) Debtor's dispatch records indicate that Debtor did not use Unit

---

1. The parties erroneously assert that the transfers total $36,379.28.

9525 at any other time during the Transfer Period. (Id.) Debtor's dispatch records indicate that Debtor used Unit 9526 extensively and with few interruptions during the Transfer Period. (Pl.'s Ex. 8.) Debtor's dispatch records indicate that Debtor did not use Unit 9527 at any time during the Transfer Period. (Pl.'s Ex. 9.)

Dave Crumpton, an expert in accounting and financial analysis of troubled companies as well as a certified fraud investigator, testified on behalf of Plaintiff. (Tr. at 78). Crumpton testified that based upon his review of Debtor's S.E.C. filings, working papers of the auditors of Debtor's parent, U.S. Trucking, Inc., and Debtor's Schedules of Assets and Liabilities, Debtor was insolvent at the time of each of the Transfers. (Tr. at 82–88.)

### CONCLUSIONS OF LAW

Section 548 of the Bankruptcy Code permits a trustee to avoid a transfer of a debtor's property if such transfer occurred within one year prior to the date of the filing of the debtor's petition and if the transfer actually or constructively defrauded creditors of the debtor. 11 U.S.C. § 548 (West 2005). In the event a transfer is avoided under § 548, the trustee may recover the property transferred under § 550. 11 U.S.C. § 550 (West 2005). The Court turns first to § 548(a)(1)(B).

*11 U.S.C. § 548(a)(1)(B)—Constructive Fraud*

■ In order to recover a transfer as constructively fraudulent under § 548(a)(1)(B), a trustee must prove that: 1) the transfer occurred within one year prior to the petition date, 2) the debtor received less than reasonably equivalent value in exchange for the transfer and 3) the debtor was either insolvent on the date the transfer was made, was left undercapitalized by the transfer or intended to incur further debt beyond its ability to pay. *See*

*In re International Management Assoc.,* 399 F.3d 1288, 1291–1293 (11th Cir.2005). The burden of proof is by a preponderance of the evidence.

*The Transfers to Defendant were made within one year before the Petition Date*

Defendant concedes that the Transfers were made within one year prior to the Petition Date.

*The Debtor was insolvent on the date of each of the Transfers*

■ The Bankruptcy Code defines insolvency as "a financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair evaluation, exclusive of—(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title." 11 U.S.C. § 101(32). The Trustee may use any appropriate means when presenting evidence to support an insolvency finding. *See Porter v. Yukon National Bank,* 866 F.2d 355, 356 (10th Cir.1989); *In re Roblin Industries, Inc.,* 78 F.3d 30, 35 (2nd Cir. 1996). As noted in *Roblin, supra,* whenever possible a determination of insolvency should be based upon expert testimony. *See In re Strickland,* 230 B.R. 276, 282 (Bankr.E.D.Va.1999). The Court finds that Dave Crumpton's testimony establishes that Debtor was insolvent at the time of the Transfers.

*Reasonably Equivalent Value*

■ A transfer is not avoidable pursuant to § 548(a)(1)(B) if the debtor receives a direct or indirect benefit. *Crews v. First Union National Bank of Florida (In re Michelle's Hallmark Cards & Gifts, Inc.),* 219 B.R. 316, 322 (Bankr.M.D.Fla. 1998). A corporation's exclusive use of a

shareholder's or principal's property in exchange for payments on the shareholder's or principal's debt constitutes reasonably equivalent value. *Id.*

■ The evidence demonstrates that Debtor did not have the use and benefit of Unit 9524 at any time during the Transfer Period. The evidence also demonstrates that Debtor used Unit 9525 for less than one month of the Transfer Period. The Court finds that Plaintiff proved by a preponderance of the evidence that Debtor did not receive reasonably equivalent value in exchange for the payments on the Menor loan.

The evidence demonstrates that Debtor did not have the use and benefit of Unit 9527 at any time during the Transfer Period. The evidence demonstrates that Debtor had the use and benefit of Unit 9526 for a significant portion of the Transfer Period. The Court finds that Plaintiff proved by a preponderance of the evidence that Debtor received reasonably equivalent value in exchange for the payments on the Pixler Loan to the extent that those payments were for the use of Unit 9526. Because Units 9525 and 9526 were the same year, make, and model the Court will attribute one-half of the Pixler Loan payments to Unit 9526.

### *11 U.S.C. § 548(a)(1)(A)—Actual Fraud*

■ In order to avoid a transfer on the basis of actual fraud under section 548(a)(1)(A) of the Bankruptcy Code, a Trustee must prove by a preponderance of the evidence that the Debtor made the transfer or incurred the obligation with the actual intent of hindering, delaying, or defrauding a creditor. *See In re Model Imperial, Inc.,* 250 B.R. 776, 791 (Bankr.S.D.Fla.2000)(citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

■ Because proof of actual intent to hinder, delay, or defraud creditors pursuant to 11 U.S.C. § 548 may seldom be established by direct proof, courts may infer fraudulent intent by looking to the existence of certain "badges of fraud". *Dionne v. Keating (In re XYZ Options, Inc.),* 154 F.3d 1262, 1271 (11th Cir.1998).[2] The Court finds that plaintiff failed to directly prove that Debtor actually intended to hinder, delay or defraud creditors. Additionally, although he proved that Debtor was insolvent at the time of the Transfers and that the value of the consideration was not reasonably equivalent to the Transfers (except as to Unit 9526), Plaintiff failed to prove the existence of any of the other badges of fraud. Accordingly, the Court will enter a judgment in

2. The badges of fraud include:

(1) The transfer or obligation was to an insider.
(2) The debtor retained possession or control of the property transferred after the transfer.
(3) The transfer or obligation was disclosed or concealed.
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) The transfer was of substantially all the debtor's assets.
(6) The debtor absconded.

(7) The debtor removed or concealed assets.
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred.
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

favor of Defendant as to Count I of the complaint.

## CONCLUSION

The Transfers by Debtor to Defendant occurred within one year prior to the Petition Date. Debtor was insolvent at the time of the Transfers. Debtor did not receive reasonably equivalent value in exchange for the transfers made to Defendant with respect to the Menor Loan (Units 9524 and 9525) and one of the units which was the subject of the Pixler Loan (Unit 9527). Debtor received reasonably equivalent value in exchange for the transfers with respect to the other unit which was the subject of the Pixler Loan (Unit 9526). Plaintiff failed to prove that Debtor made the Transfers with the actual intent to hinder, delay, or defraud a creditor. The Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.

## AMENDED JUDGMENT

This proceeding came before the Court upon a complaint seeking to avoid pursuant to 11 U.S.C. §§ 548(a)(1)(A)(Count I) and 548(a)(1)(B)(Count II) certain transfers from Debtor to Defendant. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

1. Judgment is entered in favor of, Defendant, Volvo Commercial Finance,LLC, the Americas, and against Plaintiff, Lloyd T. Whitaker, as to Count I.

2. Judgment in the amount of $27,286.71 is entered in favor of Plaintiff, Lloyd T. Whitaker, and against Defendant, Volvo Commercial Finance, LLC, the Americas, as to Count II, for which let execution issue.