# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3948

_____

| | | |
|---|---|---|
| ProGrowth Bank, Inc., | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Wells Fargo Bank, N.A.; and | * | |
| Global One Financial, Inc., | * | |
| | * | |
| Defendants-Appellants. | * | |

_____

Submitted: December 10, 2008
Filed: February 20, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

Wells Fargo Bank, N.A. ("Wells Fargo") and Global One Financial, Inc. ("Global One") (collectively, the "Defendants") appeal from the district court's grant of summary judgment in favor of ProGrowth Bank, Inc. ("ProGrowth") on its claim for a declaratory judgment. We reverse.

I

This case concerns separate and unrelated loans made by Global One and ProGrowth to Christopher Hanson ("Hanson") and/or the Christopher Hanson

Insurance Agency (the "Agency"). On September 8, 2005, Global One and the Agency entered into a Promissory Note and a Security Agreement, pursuant to which Global One loaned the Agency one million dollars. As security for the loan, Hanson assigned his interests in two separate annuity contracts, both issued by Fidelity & Guaranty Life Insurance Company ("Fidelity & Guaranty"). The two annuity contracts were valued at one million dollars, and they were identified as "L9E00015" and "L9E00016," respectively.

That same day, Wells Fargo, acting as a collateral agent for Global One, filed a financing statement with the Secretary of State of Missouri. The financing statement identifies the "Debtor" as "Christopher J. Hanson," and it describes the collateral as follows:

> All of Debtor's right, title, and interest in and to, assets and rights of Debtor, wherever located and whether now owned or hereafter acquired or arising, and all proceeds and products in that certain Annuity Contract No.: LE900015 issued by Lincoln Benefit Life in the name of Debtor . . . .

Of importance in the instant appeal, the financing statement identifies the contract number as "LE900015" instead of "L9E00015," and it identifies the issuer as "Lincoln Benefit Life" instead of Fidelity & Guaranty. On September 16, 2005, Wells Fargo, again acting as a collateral agent for Global One, filed an additional financing statement. This statement identifies the "Debtor" as "Christopher J. Hanson" and provides the following description of collateral:

> All of Debtor's right, title, and interest in and to, assets and rights of Debtor, wherever located and whether now owned or hereafter acquired or arising, and all proceeds and products in that certain Annuity Contract No.: L9E00016 issued by Lincoln Benefit Life in the name of Debtor . . . .

Although this financing statement correctly identifies the contract number, it once again mistakenly refers to the issuer of this contract as "Lincoln Benefit Life" instead of Fidelity & Guaranty. During this same time period, Wells Fargo filed financing statements regarding at least two other annuity contracts, which are not involved in this lawsuit, owned by Hanson and issued by Lincoln Benefit Life.

On February 9, 2006, Hanson obtained a loan from ProGrowth. As security for the loan, Hanson assigned his interests in the Fidelity & Guaranty annuity contracts to ProGrowth. On February 14, 2006, ProGrowth filed two financing statements with the Secretary of State of Missouri. They identify Hanson and the Agency as the debtor, and they accurately describe the collateral as: "Fidelity and Guaranty Life Insurance Annuity Contracts Number L9E00015 and Number L9E00016[.]"

ProGrowth then filed this lawsuit against Global One and Wells Fargo asserting a claim for a declaratory judgment decreeing that its perfected security interests in the Fidelity & Guaranty annuity contracts are prior to and superior to any perfected security interests claimed by the Defendants. ProGrowth also asserted a claim for conversion. ProGrowth argued that the Defendants' security interests are not perfected because the financing statements filed with respect to those interests are seriously misleading. The district court granted ProGrowth's motion for summary judgment. The Defendants then filed a motion to alter or amend the judgment, arguing the district court erred in granting summary judgment in favor of ProGrowth without requiring ProGrowth to satisfy its burden of showing its own perfected security interests in the annuity contracts. The district court denied the Defendants' motion because they never asserted that in opposition to the motion for summary judgment that ProGrowth's security interests in the annuity contracts are not perfected. This appeal followed.

II

We review de novo the district court's grant of summary judgment in favor of ProGrowth. Fitzgerald v. Action, Inc., 521 F.3d 867, 871 (8th Cir. 2008). "When the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Id. The parties agree Missouri law governs this diversity action.

Both ProGrowth and the Defendants have security interests in the Fidelity & Guaranty annuity contracts. The parties agree the priority of the Defendants' security interests is dependent upon whether their interests are perfected in accordance with Article 9 of the Missouri Uniform Commercial Code ("Missouri UCC"), Missouri Revised Statute § 400.9-101-400.9-710. Under the circumstances involved in this case, Defendants' security interests in the annuity contracts are perfected only if the financing statements they filed with respect to those interests are sufficient under Missouri law. See id. § 400.9-310. "[A] financing statement is sufficient only if it: (1) [p]rovides the name of the debtor; (2) [p]rovides the name of the secured party or a representative of the secured party; and (3) [i]ndicates the collateral covered by the financing statement." Id. § 400.9-502(a). The parties dispute whether the Defendants' financing statements satisfy the third requirement.

A financing statement "sufficiently indicates the collateral that it covers if the financing statement provides: (1) [a] description of the collateral pursuant to section 400.9-108; or (2) [a]n indication that the financing statement covers all assets or all personal property." Id. § 400.9-504. Under section 400.9-108, a "description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." Finally, "[a] financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions,

-4-

unless the errors or omissions make the financing statement seriously misleading." Id. § 400.9-506(a).

"The requirements of the UCC concerning filing, notice and perfection all are intended to provide to those dealing with commercial activities knowledge of the status of the commodity with which they are dealing so that they may protect their interests and act in a commercially prudent manner." First Nat. Bank of Steeleville, N.A. v. ERB Equip. Co., 921 S.W.2d 57, 62 (Mo. Ct. App. 1996). To that end, the financing statement "serves the purpose of putting subsequent creditors on notice that the debtor's property is encumbered." Thorp Commercial Corp. v. Northgate Indus., Inc., 654 F.2d 1245, 1248 (8th Cir. 1981). Its function is not to "identify the collateral and define property which the creditor may claim, but rather to warn other subsequent creditors of the prior interest." Id. Thus, we view the validity of the financing statement in terms of whether "it provides notice that a person *may* have a security interest in the collateral claimed." Mo. Rev. Stat. § 400.9-504 (UCC cmt. 2) (emphasis added). The UCC allows for imperfect financing statements, and it recognizes that sometimes "[f]urther inquiry from the parties concerned will be necessary to disclose the complete state of affairs." Id. Therefore, errors or omissions in the description of collateral do not render financing statements ineffective unless they are seriously misleading, which "is designed to discourage the fanatical and impossibly refined reading of statutory requirements in which courts have occasionally indulged themselves." Id. § 400.9-506 (UCC cmt. 2).

ProGrowth argues the Defendants' financing statements are seriously misleading because they identify the annuity contracts as issued by Lincoln Benefit Life instead of Fidelity & Guaranty, and because contract no. L9E00015 is identified as no. LE900015. Were this the only language contained in the Defendants' financing statements, we may be inclined to agree. These provisions of the financing statements, however, cannot be read in isolation. The financing statements describe the collateral as:

> All of Debtor's right, title, and interest in and to, assets and rights of Debtor, wherever located and whether now owned or hereafter acquired or arising, *and* all proceeds and products in that certain Annuity Contract No.: LE900015 [or L9E00016] issued by Lincoln Benefit Life in the name of Debtor . . . .

(Emphasis added).

It is necessary to analyze the financing statements in their entirety because, under the Missouri UCC, a financing statement sufficiently identifies the collateral it covers if it provides an "indication that the financing statement covers all assets or all personal property." Mo. Rev. Stat. § 400.9-504. By identifying the collateral as all assets or all personal property, the filer ensures that if "the property in question belongs to the debtor and is personal property, any searcher will know that the property is covered by the financing statement." Id. § 400.9-504 (UCC cmt. 2). While such a broad, generic description is insufficient to describe collateral in a security agreement, it is sufficient to describe collateral in a financing statement because it puts subsequent searchers on notice that any item of collateral owned by the debtor *may* be encumbered, which is the purpose of the filing system. When faced with a financing statement purporting to cover "all assets" of a debtor, it is then incumbent upon the subsequent creditor to investigate whether the collateral at issue is in fact covered by a security agreement. See id. § 400.9-502 (UCC cmt. 2) ("Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.").

We conclude the Defendants' financing statements satisfy the filing provisions of the Missouri UCC because they indicate coverage over all of Hanson's assets. The first clause of the financing statements identify the collateral as "[a]ll of Debtor's right, title, and interest in and to, assets and rights of Debtor, wherever located and whether now owned or hereafter acquired or arising . . . ." This language sufficiently describes the collateral under section 400.9-504(2) because it gives an indication that

all of Hanson's assets may be covered.  Thus, any inaccuracies in describing the specific annuity contracts at issue are immaterial and do not render the statements seriously misleading.

ProGrowth argues – and the district court agreed – the financing agreements should be interpreted to cover only "assets and rights of Debtor" "acquired or arising" in the "certain Annuity Contract[s]."  The district court construed the "all assets" clause as simply referring to rights contained in, or derived from, the annuity contracts.  We think this interpretation, however, is unduly restrictive and ignores the plain language of the statements.  The statements contain two distinct phrases separated by the word "and," which indicates the descriptive clauses are independent from each other.  See United States v. Ron Pair Enters, 489 U.S. 235, 241 (1989) ("The phrase 'interest on such a claim' is set aside by commas, and separated from the reference to fees, costs, and charges by the conjunctive words 'and any.'  As a result, the phrase 'interest on such a claim' stands independent of the language that follows.").  The first part covers all "assets and rights of Debtor," while the second part covers "proceeds and products in that certain Annuity Contract[s]."  Because the two phrases are separated by a comma and the word "and," the most natural reading of the financing statements is that the statements' identification of the collateral as "[a]ll of Debtor's right, title, and interest in and to, assets and rights of Debtor" is *in addition to* the identification of the collateral as "all proceeds and products in the Annuity Contract[s]."  See id.

Moreover, even if it is reasonable to construe the "all assets" language as simply referring to rights contained in the annuity contracts, it is equally reasonable to construe it as a separate, independent phrase covering all of Hanson's assets.  Where a description can reasonably be interpreted in one of two ways – one of which may cover the collateral at issue and one of which does not – notice filing has served its purpose of alerting subsequent creditors to the possibility that a piece of collateral may be covered;  the burden is then on the subsequent creditor to inquire further.  See

Thorp, 654 F.2d at 1252-53 ("Even assuming the words 'assignment accounts receivable' could be interpreted narrowly . . . the words also have an obvious broader meaning; in the present case notice filing has served its purpose of alerting subsequent creditors to the need for further inquiry. The UCC puts the burden on the subsequent creditor to seek clarification."). Additionally, the UCC does not require a *perfect* description that the financing statement covers all of a debtor's assets, but simply an "indication" of such coverage.

ProGrowth makes two final arguments in support of its contention that the financing statements do not sufficiently indicate coverage over all of Hanson's assets. First, it argues Defendants must not have intended the financing statements to cover all of Hanson's assets because doing so would render the subsequent descriptions of the annuity contracts superfluous. Additionally, ProGrowth argues, it would have been redundant for Defendants to have filed multiple other financing statements asserting security interests in other property owned by Hanson. This is immaterial, however, because nothing in the UCC prevents a creditor from filing redundant or precautionary financing statements, nor does the UCC prevent financing statements from setting forth alternative means of describing collateral. Further, we have previously rejected an attempt to impugn a filer's intent in filing one financing statement based on the fact that subsequently filed statements would have been redundant, holding the "standard for evaluating intent is the notice given to subsequent creditors . . . ." Id. at 1248 n.5.

Second, ProGrowth argues – and the district court again agreed – that even if the financing statements do sufficiently identify the collateral as all of Hanson's assets, such a broad statement cannot cure the seriously misleading descriptions given for the specific annuity contracts at issue.[1] We think this fails to comprehend the

---

[1]The district court noted that it was unable to find a single case in which a seriously misleading description of a specific item of collateral was "cured" by a generic reference in a financing statement to all of a debtor's assets. While true,

structure of the UCC. The UCC gives two methods for identifying collateral in a financing statement: a description of the collateral, or an indication that the financing statement covers all of the debtor's assets. It then provides that errors or omissions do not render the statements ineffective unless they are seriously misleading. The relevant question is whether the statements – judged in their entirety – are seriously misleading, not whether one alternative, and ultimately unnecessary, means of describing the collateral contained therein is seriously misleading. While Defendants' specific descriptions of the annuity contracts contain errors, the statements themselves are not seriously misleading because a subsequent creditor should reasonably understand that the financing statements may cover all of Hanson's assets. It was then incumbent upon subsequent creditors to inquire whether specific collateral owned by Hanson is the subject of a prior security agreement. Therefore, we hold the Defendants' financing statements are not seriously misleading, and, as such, they are sufficient to perfect Defendants' security interests. The district court erred in granting summary judgment in favor of ProGrowth on its claim for a declaratory judgment.

## III

Accordingly, the decision of the district court granting summary judgment in favor of ProGrowth is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

––––––––––––––––––––––––––––––

neither is there a case holding that a valid identification of collateral under the "all assets" provision is rendered invalid because a financing statement subsequently provides a description of a specific item that is deemed seriously misleading.