# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 10-6001

_____

|  |  |  |
|---|---|---|
| In re:  EDM Corporation, | * | |
| doing business as EDM Equipment, | * | |
| doing business as NOVI, LLC, | * | |
|  | * | |
| Debtor | * | |
|  | * | |
| Hastings State Bank, | * | |
|  | * | |
| Plaintiff - Appellant | * | Appeal from the United States |
|  | * | Bankruptcy Court for the |
| v. | * | District of Nebraska |
|  | * | |
| Thomas D. Stalnaker, Chapter 7 Trustee | * | |
| of EDM Corporation; | * | |
| Scott Street Enterprises; | * | |
| TierOne Bank, | * | |
|  | * | |
| Defendants - Appellees, | * | |
|  | * | |
| Wells Fargo Bank, N.A., | * | |
|  | * | |
| Defendant, | * | |
|  | * | |
| Huntington National Bank, | * | |
|  | * | |
| Defendant - Appellee, | * | |
|  | * | |
| City of Wood River, Nebraska; | * | |
| Vactor Manufacturing, Inc., | * | |
|  | * | |
| Defendants | * | |

TierOne Bank,                          *
                                       *
        Third Party Plaintiff,         *
                                       *
            v.                         *
                                       *
IBM Credit, LLC;                       *
Wells Fargo Equipment Finance, Inc.;   *
Federal Signal Corporation,            *
E-One, Inc.;                           *
Elgin Weeper Company,                  *
                                       *
        Third Party Defendants         *


                    _____


                Submitted:  April 15, 2010
                   Filed: May 14, 2010
                    _____


Before SCHERMER, FEDERMAN, and VENTERS Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

        Hastings State Bank appeals from the Order of the Bankruptcy Court[1] declaring that its lien against the Debtor's assets  was not properly perfected due to the manner in which Hastings State Bank listed the debtor's name on its financing statement filed with the Nebraska Secretary of State.  For reasons that follow, we AFFIRM.

_____

        [1]  The Honorable Thomas L. Saladino, United States Bankruptcy Judge for the District of Nebraska.

2

## General Background

Debtor EDM Corporation is a Nebraska corporation which sold and leased emergency vehicles. It was incorporated in 1991, and its official name of record at the Nebraska Secretary of State's office is "EDM Corporation." The Debtor routinely did business as "EDM Equipment," and was commonly known by that name, although it had no registered trade names with the Nebraska Secretary of State. At issue here is the priority of liens in the proceeds of a particular ambulance (the "Ambulance") which had been owned by EDM.

## The Asserted Liens in the Ambulance

Hastings State Bank, TierOne Bank, and Huntington National Bank each assert a lien against the Ambulance.[2] As stated, the sole issue here is priority.

Over the years, Hastings State Bank made several loans to EDM, in excess of $4.5 million. Hastings filed a financing statement on June 10, 2003, with the Nebraska Secretary of State. Its financing statement identified the debtor as "EDM CORPORATION D/B/A EDM EQUIPMENT." Neither TierOne Bank nor Huntington National Bank disputes that, but for an alleged defect in the way EDM's name appears as the debtor on the financing statement, Hastings would be first in priority because its lien was created, and its financing statement was filed, first.

---

[2] We note that appellant Scott Street Enterprises, L.C. asserted in the Bankruptcy Court that its statutory landlord's lien trumped all of the other liens against the Ambulance. The Bankruptcy Court held that Scott Street's lien was junior to the purchase-money lien of Huntington, but senior to TierOne and Hastings. Scott Street's lawyer entered an appearance in this appeal, but did not file a brief. Since we agree with the Bankruptcy Court that Huntington is entitled to the proceeds, and since no one here contests the validity of Scott Street's landlord's lien, we affirm the bankruptcy court as to its position as well.

On December 30, 2005, TierOne Bank extended a $3.0 million line of credit to EDM. TierOne ran three UCC searches, using the standard search logic, over several months around the time of its loan, none of which revealed Hastings' financing statement. To perfect its lien, TierOne filed a financing statement on January 6, 2006, listing the debtor as "EDM Corporation."

On or about November 21, 2007, Huntington National Bank made a $250,000 revolving line of credit loan to EDM. Huntington conducted a UCC search on the Nebraska Secretary of State's search engine, using the standard search logic, under the debtor name "EDM Corporation." The search did not reveal Hastings' financing statement, but did reveal TierOne's. To perfect its security interest, Huntington filed a financing statement with the Nebraska Secretary of State on December 13, 2007, identifying the debtor as "EDM Corporation." That financing statement also contained a broad description of collateral, including inventory and equipment. On December 13, 2007, Huntington made an advance on the line of credit directly to the manufacturer of the Ambulance, to pay for EDM's purchase of the Ambulance. TierOne and Huntington had entered into an intercreditor agreement whereby TierOne agreed to subordinate any interest that it may have in the Ambulance to Huntington's interest, so there is no dispute that Huntington's interest trumps TierOne's in the Ambulance, even though TierOne's was filed before Huntington's.

Neither TierOne nor Huntington conducted a lien search under the d/b/a of EDM Equipment. One of the issues in this appeal is whether they were obligated to do so. Despite conducting lien searches using the debtor's organizational name (EDM Corporation), neither TierOne nor Huntington was advised by those searches of the existence of the prior lien to Hastings; and, neither had actual knowledge of such lien.

## The Bankruptcy Court's Decision

EDM filed a voluntary Chapter 7 case on April 10, 2008, and Hastings subsequently filed an adversary proceeding to determine the validity, extent, and priority of the liens in various of EDM's assets, including the Ambulance. The parties agreed that Huntington could obtain relief from the stay, sell the Ambulance, and deposit the proceeds with an escrow agent, pending a determination as to priority in the Ambulance and its proceeds. The Bankruptcy Court ultimately held that Hastings' financing statement was not validly perfected because a search of the Nebraska Secretary of State's U.C.C. records, using the office's standard search logic, did not reveal the financing statement identifying the debtor as "EDM Corporation d/b/a EDM Equipment."[3] Therefore, the Court held that Huntington was in first position due to the purchase-money subordination agreement with TierOne.

## Standard of Review

We review findings of fact for clear error, and legal conclusions *de novo.*[4]

## Discussion

Nebraska adopted Revised Article 9 of the Uniform Commercial Code, effective July 1, 2001.[5] To put the relevant statutory provisions in context, in practice, a creditor wishing to perfect its lien files with the appropriate governmental authority a financing statement, typically on a standardized form, listing the name of the debtor, the name of the creditor, and a description of the collateral. Once a financing statement is filed, a government employee enters the data from the financing statement

---

[3] *Order* dated Dec. 4, 2009, at 4 (summarizing the Court's February 10, 2009 Order).

[4] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[5] Neb. Rev. Stat. U.C.C. § 9-701.

5

into a computerized indexing system. If a potential lender wants to determine for itself whether there are existing liens on the borrower's property, that lender can submit a request to the authority for a lien search (sometimes by conducting its own search on-line). More than 40 states that have adopted Revised Article 9 have also adopted administrative regulations[6] which guide both the governmental authority in entering data from financing statements, as well as the public in conducting searches. Parts of the regulations are often referred to as "search logic." As relevant here, the Nebraska search logic requires that data be entered into the system and indexed based on the exact name listed in the field on the financing statement reserved for the debtor's name. The purpose of this system is to put subsequent creditors on notice of asserted liens[7] and, if everything is done correctly, the search should reveal any financing statements filed.

With that background, we turn to the relevant provisions of Nebraska's version of Revised Article 9:

> § 9-502(a)(1), which provides that "a financing statement is sufficient only if it . . . provides the name of the debtor. . . ."[8];
>
> § 9-503(a)(1), which provides that "[a] financing statement sufficiently provides the name of the debtor . . . if the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized. . . ."[9];

---

[6] *See* John C. Murray, *Sufficiency of Debtor's Name for Valid U.C.C. Filings Under Revised Article 9*, 23 No. 3 Prac. Real Estate Lawyer 25, 39 (May, 2007).

[7] *ProGrowth Bank, Inc. v. Wells Fargo Bank, N.A.*, 558 F.3d 809, 812 (8th Cir. 2009).

[8] Neb. Rev. Stat. U.C.C. § 9-502(a)(1).

[9] Neb. Rev. Stat. U.C.C. § 9-503(a)(1). A "registered organization" is defined in § 9-102 so as to ordinarily include corporations, limited partnerships, and limited liability companies. *See* Neb. Rev. St. U.C.C. § 9-503 cmt. 2.

§ 9-503(b)(1), which provides that "[a] financing statement that provides the name of the debtor in accordance with subsection (a) is not rendered ineffective by the absence of . . . a trade name or other name of the debtor. . . .";[10]

§ 9-503(c), which provides that "[a] financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor . . . ."[11]; and

§ 9-506(a), which provides:

> (i) This subsection applies until September 2, 2010. A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.
>
> (ii) Except as otherwise provided in subdivision (iii) of this subsection, a financing statement that fails sufficiently to provide the name of the debtor in accordance with section 9-503(a) is seriously misleading.
>
> (iii) If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with section 9-503(a), the name provided does not make the financing statement seriously misleading.[12]

Hastings asserts that, contrary to the Bankruptcy Court's ruling, a court should not consider § 9-506's "seriously misleading" analysis unless the financing statement does not sufficiently provide the debtor's name in accordance with §§ 9-502 and 9-

---

[10] Neb. Rev. Stat. U.C.C. § 9-503(b)(1).

[11] Neb. Rev. Stat. U.C.C. § 9-503(c).

[12] Neb. Rev. Stat. U.C.C. § 9-506(a)(i) - (iii).

503. And, Hastings asserts that its financing statement did sufficiently provide EDM's name in accordance with §§ 9-502 and 9-503 because the words "EDM Corporation" were included in the name provided. We hold both that its financing statement did not provide the name of the debtor, and also that it was seriously misleading.

The Eighth Circuit has emphasized that the purpose of filing a financing statement is to put subsequent creditors on notice that the debtor's property is encumbered. In *Pro Growth v. Wells Fargo Bank*, in interpreting §§ 9-502(a), 9-504 (relating to the description of the collateral on a financing statement), and 9-506(a), the Eighth Circuit stated:

> The requirements of the UCC concerning filing, notice and perfection all are intended to provide to those dealing with commercial activities knowledge of the status of the commodity with which they are dealing so that they may protect their interests and act in a commercially prudent manner. To that end, the financing statement serves the purpose of putting subsequent creditors on notice that the debtor's property is encumbered. Its function is . . . to warn other subsequent creditors of the prior interest.[13]

In *Pro Growth*, the issue was not about the name of the debtor used in the filing, as is the situation here. Instead, the issue was whether a creditor which was notified of the existence of the lien, due to the UCC filing, had a duty to inquire further as to which specific collateral was covered by it. Because the financing statements in that case put subsequent searchers on notice of a potential lien in the particular assets at issue, the Eighth Circuit held they were sufficient, despite errors in the description of the collateral.

---

[13] *ProGrowth Bank, Inc. v. Wells Fargo Bank, N.A.*, 558 F.3d 809, 812 (8th Cir. 2009) (citations and internal quotation marks omitted) (interpreting Missouri's version of Article 9, which, in relevant part, is the same as Nebraska's version).

We find it significant that the Eighth Circuit emphasized that the purpose of the filing requirements is to let other creditors know of the existence of the lien. The very first step in that process for creditors is *finding* the UCC statement in the first place, and the way to do that is by searching the records under the debtor's organizational name. In other words, complete accuracy is even more important with the debtor's name than it is with the description of collateral. As one court has stated, with regard to the debtor's name, the legislative language and purpose of the revised UCC "evidenced an intent to shift the responsibility of getting the debtor's name right to the party filing the financing statement. This approach would enable a searcher to rely on that name and eliminate the need for multiple searches using variants of the debtor's name, all leading to commercial certainty."[14] And, according to another court, "[p]ost-revision case law is fairly well settled that the burden is squarely on the creditor [filing the financing statement] to correctly identify the name of the debtor."[15]

Hastings points out that the official comments to § 9-503 state that, "[t]ogether with subsections (b) and (c), subsection (a) reflects the view prevailing under former Article 9 that the actual individual or organizational name of the debtor on a financing statement is both necessary and sufficient, *whether or not the financing statement provides trade or other names of the debtor . . . .*"[16] Thus, Hastings asserts, the comment implies that trade names can be included in addition to the organizational name of the debtor.[17]

---

[14] *Genoa Nat'l Bank v. Southwest Implement, Inc. (In re Borden)*, 353 B.R. 886, 890 (Bankr. D. Neb. 2006) (quoting *Pankratz Impl. Co. v. Citizens Nat'l Bank*, 130 P.3d 57, 63 (Kan. 2006)).

[15] *In re John's Bean Farm of Homestead, Inc.*, 378 B.R. 385, 390 (Bankr. S.D. Fla. 2007).

[16] Neb. Rev. St. U.C.C. § 9-503 cmt. 2 (emphasis added).

[17] *See* Barkley Cark and Barbara Clark, *Adding a Trade Name After the Debtor's Legal Name May be Hazardous to the Health of Your Financing Statement*, 05-09 Clark's Sec. Trans. Monthly 1 (A.S. Pratt & Sons, May 2009). *See also* 4 White & Summers, *Uniform Commercial*

While official comments to the UCC are not binding, they are persuasive in matters of interpretation.[18] However, when considered in conjunction with the rest of the rules and regulations, and keeping in mind the critical importance of accuracy in the debtor's name under Revised Article 9, we do not interpret this comment to endorse the practice of adding superfluous information to a registered organization's *name* in the name field on a financing statement. Rather, it is clear from the language of the statute itself that § 9-503 requires that, as to registered organizations, the debtor's name (as listed in the name field on the form) must be "the name of the debtor indicated on the public record of the debtor's jurisdiction of organization."[19] Viewed with § 9-503(b)(1), which provides that "[a] financing statement that provides the name of the debtor in accordance with subsection (a) is not rendered ineffective by the *absence of* . . . a trade name or other name of the debtor," and § 9-503(c), which provides that "[a] financing statement that provides *only* the debtor's trade name does not sufficiently provide the name of the debtor," we interpret the comment to mean that trade or other names may be added as *other* or *additional* names on a financing statement, but not in place of, or as part of, the debtor's organizational name.[20]

---

*Code,* § 31-12 (6th ed.).

[18] *Blue Valley Co-op. v. Nat'l Farmers Org.*, 600 N.W.2d 786, 792 (Neb. 1999).

[19] For purposes of simplicity, we refer to "the name of the debtor indicated on the public record of the debtor's jurisdiction of organization" as the debtor's "organizational name."

[20] Although Hastings used a different form when it filed the instant financing statement, we note that the International Association of Commercial Administrators has endorsed an Official UCC Financing Statement Form (UCC1), which was revised on May 22, 2002, and which was used by both TierOne and Huntington when they filed their financing statements. *See* Exhibit D to *Affidavit of Gary Beick* (Doc. #125) (TierOne's financing statement); Exhibit 5 to *Affidavit of Laurie Bakke* (Doc. #40) (Huntington's financing statement). The official form, and its accompanying instructions, can be found on the Nebraska Secretary of State's website. The form contains distinctly separate fields for the debtor's exact full legal name, and additional names. The form's instructions expressly instruct filing creditors to enter only one debtor name in the name field, using the "exact full legal name," and specifically instructs: "Don't use Debtor's trade name, DBA, AKA, FKA, Division name, etc. in place of or combined with Debtor's legal name; you may add such other names as additional Debtors if you wish (but this is neither required nor recommended)." Since the instructions on the form are not part of the

In *In re Jim Ross Tires, Inc.*,[21] the Bankruptcy Court for the Southern District of Texas was presented with facts which are, for all practical purposes, identical to those here. In that case, the name of the debtor on the records of the Texas Secretary of State was "Jim Ross Tires Inc." The debtor also had previously had an "assumed name" of "HTC Tires & Automotive Centers" but that name had expired in 2000, and was not renewed. In 2002, a creditor filed a financing statement listing the debtor as "JIM ROSS TIRES, INC. dba HTC TIRES & AUTOMOTIVE CENTERS." The trustee in Jim Ross Tires Inc.'s bankruptcy case asserted that the creditor's financing statement had not been properly perfected because the debtor's name had not been properly listed.

As here, the creditor in *Jim Ross* relied on the official comment to § 9-503 and argued, as does Hastings here, that it had correctly listed the legal name, and that the addition of the DBA information after the correct name should be considered superfluous and ignored in the analysis. The court disagreed, however, finding that:

> While it is clear that the legislature considered certain effects of dba usage in satisfying § 9.503(a), the Court finds that the interpretation [the creditor] applies is overly broad and inoperable in application when considered with other sections of the Code. Specifically, [the creditor's] asserted interpretation, if applied, conflicts with the purposes of the indexing system when evaluated against the administrative procedures for indexing and searching UCC records filed with the Texas Secretary of State.[22]

As discussed above, we agree with that analysis.

---

bankruptcy court record, we do not rely on them in concluding that a debtor's organizational name – and only that name – should be listed in the name field. Nor do we suggest that Hastings was obligated to use the official form, or was bound by that form's instructions. Nevertheless, the instructions reflect the statute-based requirement that the debtor's organizational name only is to be correctly listed in the field for the debtor's name.

[21] 379 B.R. 670 (Bankr. S.D. Tex. 2007).

[22] *Id.* at 676.

11

In sum, we interpret § 9-503 to mean exactly what it says: if the debtor is a registered organization, then a financing statement "provides the name of the debtor" only if it "provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization" – nothing more and nothing less. Trade names may be added, but not as part of the organizational name itself. Consequently, because Hastings' UCC statement added superfluous information to EDM's organizational name, it did not sufficiently provide the name of the debtor.[23]

Thus, having correctly determined that Hastings' financing statement did not sufficiently provide the name of the debtor, the Bankruptcy Court then turned to § 9-506's safe harbor, to determine whether the error rendered the filing seriously misleading. Again, § 9-506(a)(iii) provides that, if a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, would disclose a financing statement, then the erroneous name provided does not make the financing statement seriously misleading. The undisputed evidence was that a search of the Nebraska Secretary of State's records, using the debtor's correct name, "EDM Corporation," and using the office's standard search logic, did not disclose Hastings' financing statement. Hastings asserts, in effect, that there must be some flaw in Nebraska's search logic and that the Bankruptcy Court allowed the technological deficiencies of the state's search engine to trump a properly filed financing statement. Indeed, at oral argument, Hastings counsel contended that the search logic is contrary to the statute, and so should not serve as the basis for striking down its perfection.

---

[23] We note that, in concluding that the addition of the d/b/a rendered the financing statement insufficient, the Bankruptcy Court pointed out that there was no evidence that "EDM Equipment" had been a *registered* trade or other name of EDM Corporation. One could interpret the comment to be that, had "EDM Equipment" been a registered d/b/a, Hastings might have prevailed. While not necessary to our decision, we see no distinction between a registered d/b/a and an unregistered "commonly-known" d/b/a for these purposes. Because neither is a "name of the debtor indicated on the public record of the debtor's jurisdiction of organization," the addition of either to the name field, as part of the debtor's actual organizational name, would render a financing statement insufficient.

In essence, Hastings asserts that the standard search logic should have found its UCC statement because it should have ignored everything in the field for the debtor's name except the very words "EDM Corporation." The Administrative Code provides that organization names are to be entered into the system by the Secretary of State's filing officer exactly as set forth in the financing statement;[24] that the full name of a corporation shall consist of the name as stated on the articles of incorporation;[25] and that a search request will be processed using the name in the exact form submitted.[26] The Administrative Code contains a standardized list of "noise words" (*e.g.*, company, limited, incorporation, corporation) which are ignored in the search process.[27] That list does not include "d/b/a" or names used as a d/b/a. These administrative provisions are not unique to Nebraska.[28] They set out clear rules which were in place when all parties here filed their financing statements. While Huntington and TierOne were aware that EDM Corporation did business as EDM Equipment,[29] they filed financing statements which would be found using the standard search logic, listing the debtor only as EDM Corporation.

As to Hastings, the addition of "d/b/a EDM Equipment" to the debtor's name field on the financing statement made the document seriously misleading as to the name of the debtor. As the Bankruptcy Court said, it simply cannot be the rule that

---

[24]  436 Neb. Admin. Code Ch. 4, § 407.1.

[25]  436 Neb. Admin. Code Ch. 5, § 501.1.

[26]  *Id.*

[27]  436 Neb. Admin. Code Ch. 5, § 503.4. *See Jim Ross Tires*, 379 B.R. at 677 n. 5, for the full list of noise words promulgated by the International Association of Corporation Administrators.

[28] For example, the Administrative Rules used in both Nebraska and Texas are the Model Administrative Rules promulgated by the International Association of Corporate Administrators.  *See Jim Ross Tires,* 379 B.R. 670.

[29]  We note that in its security agreement (but not in the filed financing statement), TierOne identified the borrower as EDM Corporation d/b/a Equipment.

13

a financing statement should be deemed effective as long as words constituting the legal name of the debtor appear somewhere in the string of words listed as the debtor's name, and regardless of whatever additional words are tacked on to the end.[30]

Finally, we should point out that the strict filing requirements as to corporations and other registered organizations do not necessarily apply to debtors who are human beings. Prior to enactment of Revised Article 9, the question in all cases was whether a "reasonably diligent search" would locate the lien under the name used.[31] However, as shown, Revised § 9-503(a) provides that, as to registered organizations only, the financing statement must contain the name of the debtor as indicated on the public record of its jurisdiction of organization. Admittedly, §§ 9-502 and 9-503 may well leave some room for judgment in the search process as to human beings.[32] Thus, if a person is widely known by a name different from that on his or her birth certificate, or does business under a different name, a searcher might be expected to look under those names as well. But as to registered organizations, the name on the "birth certificate" (*e.g.*, the articles of incorporation) controls. And, this makes sense: in contrast to registered organizations such as corporations, there is no public "registry" of people from which a creditor can ascertain a person's correct legal name.

---

[30] *Accord In re Jim Ross Tires*, 379 B.R. at 678 n. 6 (noting that, under the creditor's interpretation of Article 9, creditors could file financing statements with any extraneous words following the proper name and claim to be perfected, and that this argument essentially overrides the intent and purposes of the filing system).

[31] *See In re John's Bean Farm*, 378 B.R. at 389; *In re Borden*, 353 B.R. at 889.

[32] G. Ray Warner, *Using the Strong-arm Power to Attack Name Errors Under Revised Article 9*, Am. Bankr. Inst. J. Oct. 2001.

14

## Conclusion

We agree with the Bankruptcy Court that Hastings' financing statement was insufficient due to the addition of the d/b/a information as part of EDM's name. Accordingly, we affirm.

———————————————