### In re CAMTECH PRECISION MANUFACTURING, INC., et. al., Debtors.

**Official Committee of Unsecured Creditors, Plaintiff,**

**v.**

**Regions Bank, Defendant.**

Bankruptcy No. 10–22760–BKC–PGH.
Adversary No. 10–3479–BKC–PGH–A.

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Jan. 31, 2011.

Carlos E. Sardi, Esq., Glenn D. Moses, Esq., Miami, FL, for Plaintiff.

George L. Zinkler, Fort Lauderdale, FL, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PAUL G. HYMAN, Chief Judge.

**THIS MATTER** came before the Court upon the Official Committee of Unsecured Creditors' ("Plaintiff" or "Committee") *Motion for Summary Judgment* ("Motion"). The bankruptcy cases of the following related entities are jointly administered: Camtech Precision Manufacturing, Inc. ("Camtech"), R & J National Enterprises, Inc. ("R & J"), and Avstar Fuel Systems, Inc. ("Avstar Fuel") (collectively, the "Debtors"). Plaintiff's Motion seeks a summary determination that Regions Bank ("Regions") failed to properly perfect its security interest in the assets of Camtech and Avstar Fuel, thereby rendering Regions an unsecured creditor, rather than a secured creditor, with respect to the assets of Camtech and Avstar Fuel. The Committee also seeks disgorgement of adequate protection payments made to Regions in respect of these allegedly unperfected liens and avoidance of any replacement liens granted to Regions, to the extent such lien may have existed pre-petition, by virtue of the *Agreed Second Interim Order Extending Debtors' Authorization to Use Case Collateral* ("Agreed Cash Collateral Order") (D.E. # 53).

### BACKGROUND

Each of the jointly-administered Debtors filed voluntary Chapter 11 petitions on May 10, 2010 ("Petition Date"). The Committee was appointed by the U.S. Trustee on June 4, 2010, and granted standing to prosecute this action by an Agreed Order entered on August 3, 2010. Camtech is a New York corporation authorized to transact business in Florida. Avstar Fuel is a Florida corporation. Prior to the Petition Date, the Debtors entered into various financing and/or lending arrangements with, or otherwise became indebted to, Regions. Regions asserts a perfected security interest in substantially all of the Debtors' personal property in connection with a term loan in the approximate amount of $282,107 and a revolving line of credit in the approximate amount of $3,900,000. According to its proof of claim, Regions asserts a secured claim in the total amount of $4,153,137.79 as of the Petition Date.

### 1. The UCCs

On or about September 21, 2007 and October 17, 2007, Regions filed a series of UCC–1 Financing Statements with the Florida Secured Transactions Registry (the "Florida UCCs"), and with the State of New York (the "New York UCCs")[1]. The Florida UCCs filed on September 21, 2007 bear file numbers 200706591737, 20076591729, and 20076591745. The New York UCCs filed on September 21, 2007 bear file numbers 200709210755259, 200709210755297, and 200709210755273. The remaining New York UCCs, filed on October 17, 2007 and bearing file numbers 200710170817495 and 200710170817483, indicate that these subsequent filings are amendments to restate or describe the collateral. All of the UCCs, both the Florida UCCs and the New York UCCs, were filed on the "State of Florida Uniform Commercial Code Financing Statement Form"[2], and the New York amendments were filed

---

1. The parties' *Joint Stipulation of Facts* states that true and correct copies of the New York UCCs and the Florida UCCs are attached to the Complaint as Exhibits "A" and "B" respectively. *Joint Stipulation of Facts* ¶¶ 12 and 16.

2. The *New York* UCCs filed using Florida's form on September 21, 2007 indicate that all *Florida* documentary stamps have been paid. It thus appears that the UCCs filed in New York were copies of the UCCs filed in Florida.

on the "State of Florida Uniform Commercial Code Financing Statement Amendment Form".

The Florida UCCs and the New York UCCs list R & J as the Debtor in the debtor box on the first page of each UCC. Avstar Aircraft Accessories, Inc. ("Avstar Aircraft"), an affiliated entity that is not part of this bankruptcy proceeding, is listed as "Additional Debtor" in the additional debtor box on the first page of each UCC. However, there is no direction in the additional debtor box on the first page of each UCC to look at the attachment listing additional debtors. The only direction to look beyond the first page of each UCC is a statement: "See Exhibit 'A' attached for a description of the collateral."[3] The second page of each of the Florida and New York UCCs filed on September 21, 2007 is a plain paper attachment which states that Debtors Camtech and Avstar Fuel are "additional debtors". Regions did not use the approved UCC-1 Additional Party form or the national standard UCC1AP form, both of which are approved by Florida, nor did Regions use the national standard UCC1AP form approved by New York to list Camtech and Avstar Fuel as additional debtors. The third page of each of the UCCs is an attached Exhibit "A" (and an Exhibit "B" on the New York amendments) listing specific collateral.

### 2. The Searches

The parties stipulated that a search of the Florida Secured Transaction Registry under "Avstar Fuel Systems, Inc." does not disclose an indexed UCC-1 financing statement naming Regions as a secured party as of the Petition Date.

The parties also stipulated that a search of the State of New York Department of Corporations, State Records and Uniform Commercial Code via New York's Uniform Commercial Code Public Inquiry System under "Camtech Precision Manufacturing, Inc." does not disclose an indexed UCC-1 financing statement naming Regions as a secured party as of the Petition Date.

### 3. The Agreed Cash Collateral Order

The Agreed Cash Collateral Order, entered June 22, 2010, granted Regions a replacement lien to the same extent as may have existed pre-petition and a reservation of rights under 11 U.S.C. §§ 503(b) and 507(a)-(b). As additional adequate protection, the Agreed Cash Collateral Order authorized the Debtors to pay Regions the sum of $20,910.00 per month beginning on June 4, 2010 and continuing on the 4th day of each month thereafter (the "Adequate Protection Payments"). The Adequate Protection Payments under the Agreed Cash Collateral Order constitute an interest in property of the Debtors' estates pursuant to 11 U.S.C. § 541.

### 4. The Elkin Affidavit

The Affidavit of Steven C. Elkin ("Elkin Affidavit"), the Florida attorney whose office prepared and filed the UCCs, was attached as Exhibit "B" to Regions' Response. The Elkin Affidavit states that "[c]onsistent with practices of the Florida Department of State and the New York Department of State," the UCC-1 statements listed the Borrower and Avstar Aircraft as debtors on the preprinted form and included a separate attachment listing Avstar Fuel and Camtech as additional debtors. The Elkin Affidavit further states that prior to filing, "my office confirmed with the Florida Department of

---

**3.** The New York amendments filed October 17, 2007 state: "See Exhibits 'A' and 'B' attached for a description of the collateral."

State that it would accept the UCC–1 financing statement for filing with a separate attachment listing the additional debtors, rather than any particular form prescribed by it to list additional debtors, and that it would file the UCC–1 financing statement so that all four companies would be reflected as debtors." The Elkin Affidavit states that his office confirmed same with the New York Department of State and that his office also confirmed that the New York Department of State "would accept for filing a UCC–1 financing statement on a form used by the Florida Department of State, rather than any particular form prescribed by it."

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) & (O).

### I. Summary Judgment

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rice v. Branigar Org., Inc.*, 922 F.2d 788 (11th Cir.1991); *Rollins v. TechSouth,*

*Inc.*, 833 F.2d 1525 (11th Cir.1987); *In re Pierre*, 198 B.R. 389 (Bankr.S.D.Fla.1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *See United States v. Feinstein*, 717 F.Supp. 1552 (S.D.Fla.1989).

In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The material facts of this matter are undisputed. Therefore, entry of summary judgment is appropriate.

### II. The UCCs did not perfect Regions' asserted security interest in the assets of Camtech and Avstar Fuel

Revised Article 9 of the Uniform Commercial Code, which sets forth the requirements for perfecting a security interest in personal property, has been adopted by both Florida and New York.[4] The "purpose of filing a financing statement is to put subsequent creditors on notice that the debtor's property is encumbered." *In re EDM Corp.* 431 B.R. 459, 464 (8th Cir. BAP 2010). For Florida entities, such as Avstar Fuel, perfection of a security interest occurs when a financing statement is filed with Florida's official filing office, the Florida Secured

---

4. New York and Florida have parallel, but in some instances, slightly differently worded versions of Revised Article 9. New York's version of Revised Article 9, NY UCC § 9–101 *et seq.*, was effective July 1, 2001. Florida's version of Revised Article 9, Fla. Stat. § 679.1011 *et seq.*, was effective January 1, 2002.

Transaction Registry. Fla. Stat. § 679.5011(1)(b). For New York entities, such as Camtech, perfection of a security interest occurs when a financing statement is filed in the Office of the Secretary of State. NY UCC § 9–501(2). Financing Statements must contain: 1) the name of the debtor, 2) the name of the secured party, and 3) the collateral covered. Fla. Stat. § 679.5021(1); NY UCC § 9–502(a). Pursuant to the safe harbor provision of Revised Article 9, § 9–506, a financing statement containing minor errors may nevertheless be effective. Since the purpose of filing is to put subsequent creditors on notice, "the discoverability of a financing statement expressly delimits permissible error" under the safe harbor provision. *In re John's Bean Farm of Homestead, Inc.*, 378 B.R. 385, 390 (Bankr.S.D.Fla.2007)(finding financing statement using incorrect debtor name was seriously misleading). New York's safe harbor provision, NY UCC § 9–506[5] "Effect of Errors or Omissions", provides in pertinent part:

(a) Minor errors and omissions. A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

(b) Financing statement seriously misleading. Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9–503(a) is seriously misleading.

(c) Financing statement not seriously misleading. If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9–503(a), the name provided does not make the financing statement seriously misleading.

NY UCC § 9–506.

 Thus, as a general rule, minor errors in a UCC financing statement do not affect the effectiveness of the financing statement, unless the errors render the document seriously misleading. Based upon the undisputed fact that the prescribed searches of New York and Florida records failed to disclose a financing statement naming Regions as a secured creditor of Camtech or Avstar Fuel, Plaintiff argues that the subject UCCs are seriously misleading and ineffective to perfect Regions' asserted security interest. The Court agrees. While Regions' UCCs contain the statutorily required information and the correct names of the Debtors, the Court finds that the manner in which this information was provided for Camtech and Avstar Fuel made the UCCs seriously misleading as to these additional Debtors.

**5.** The corresponding statute under Florida law,

§ 679.5061. "Effect of errors or omissions" provides in pertinent part:

(1) A financing statement substantially complying with the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

(2) Except as otherwise provided in subsection (3), a financing statement that fails sufficiently to provide the name of the debtor in accordance with s. 679.5031(1) is seriously misleading.

(3) If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with s. 679.5031(1), the name provided does not make the financing statement seriously misleading. Fla. Stat. § 679.5061.

Both New York and Florida have approved standard national and/or state forms for listing additional debtors. Regions concedes that it did not use an approved additional party form when listing Camtech and Avstar Fuel as additional debtors. Mr. Elkin stated in his affidavit that, "Prior to filing my office confirmed with the New York Department of State that it would accept the UCC–1 financing statement for filing with a separate attachment listing the additional debtors, rather than any particular form prescribed by it to list additional debtors, and that it would file the UCC–1 financing statement so that all four companies would be reflected as debtors." Response, Ex. "B" ¶ 6.[6] The filing offices did indeed accept the forms submitted by Mr. Elkin's office. The problem arose from Mr. Elkin's office's misuse of the forms that were submitted. Had the additional debtor information been submitted using an approved standard form which is readily available online,[7] or had there been a direction in the additional debtor box on the first page of the UCC–1 form to look at the attachment for additional debtor information, the result here would be different.

## A. The New York UCCs

■ Regions correctly points out that there is no statutory requirement to use an approved additional party form when listing additional debtors on a financing statement. However, by using an approved form, the filer ensures against the risk that the financing statement will be rejected. Under New York law, except for specific reasons, the filing office may *not* refuse to accept a written financing statement using an approved form. NY UCC § 9–521. Furthermore, New York has promulgated Rules of the Department of State Respecting the Uniform Commercial Code which includes rules regarding forms and procedures. New York UCC Rule § 143–1.4 "Rejection of written UCC documents that are not on approved forms" provides:

(a) A filing office may reject any written UCC document that is not on an approved form.

(b) For the purposes of applying section 9–516(b) of the UCC, a filing office may treat any name, address, file number, or other matter as not having been provided in a written UCC document if such name, address, file number, or other matter is not set forth in the appropriate space provided therefor on an approved form.

(c) Nothing in this section shall be construed as prohibiting a filer from including an exhibit, schedule or other attachment that is not on an approved form as part of a written UCC document, provided that the appropriate approved form is used as the first page of such written UCC document, and provided further that for the purposes of applying section 9–516(b) of the UCC, a filing office may treat any name, address, file number, or other matter that is contained in any such non-approved exhibit, schedule or attachment as not having been provided in the UCC document.

New York UCC Rule § 143–1.4.

Regions' New York UCCs were filed using a Florida-approved UCC–1 form.

---

6. Mr. Elkin states in his Affidavit that his office confirmed same with the Florida filing office. Response, Ex. "B" ¶ 5.

7. Florida's approved additional party form is available free of charge online at www.

floridaucc.com/UCCWEB/forms.aspx. New York's approved form is available free of charge online at www.dos.state.ny.us/corps/uccforms.html.

However, Regions failed to use a standard approved additional party form to list Camtech and Avstar Fuel as additional debtors, opting instead to list Camtech and Avstar Fuel as additional debtors on an unapproved attachment that was not even referenced in the box for additional debtors on the first page of each UCC. New York accepted the financing statement filed using a Florida-approved UCC–1 form, but the New York filing office treated Regions' unapproved additional debtor attachment in accordance with Rule § 143–1.4(c). Thus, the New York filing office did not prohibit Regions from filing the attachment as part of its UCC–1. However, under Rule § 143–1.4(c), the New York filing office was permitted to, and apparently did, treat the additional debtor information contained in "such non-approved exhibit, schedule or attachment as not having been provided in the UCC document". NY UCC Rule § 143–1.4(c). Therefore, the additional debtors Camtech and Avstar Fuel, listed on an unreferenced and unapproved attachment, were treated as not having been provided in the UCC document pursuant to the rule, and consequently, the financing statement was not indexed under the names of those entities. The New York UCCs, having neither used the approved additional party form, nor having contained any direction to look beyond the first page of the UCC–1 for additional debtor information, were seriously misleading with respect to additional debtors Camtech and Avstar Fuel. As such, the New York UCCs were ineffective to perfect Regions' alleged security interest in the assets of Camtech.

### B. The Florida UCCs

While Florida has no formal UCC rule corresponding to New York's Rule § 143–1.4(c), pursuant to Fla. Stat. § 679.521 the State has developed and approved acceptable forms for filing. The comments to Fla. Stat. § 679.521 state in part:

> [T]his section provides sample written forms that must be accepted in every filing office in the country, as long as the filing office's rules permit it to accept written communications. By completing one of the forms in this section, a secured party can be certain that the filing office is obligated to accept it.
>
> The forms in this section are based upon national financing statement forms that were in use under former Article 9. Those forms were developed over an extended period and reflect the comments and suggestions of filing officers, secured parties and their counsel, and service companies. The formatting of those forms and of the ones in this section has been designed to reduce error by both filers and filing offices.
>
> \* \* \*
>
> Although filers are not required to use the forms, they are encouraged and can be expected to do so, inasmuch as the forms are well designed and avoid the risk of rejection on the basis of form or format.

Fla. Stat. § 679.521 cmt. 2.

Thus, Florida expects filers to use the approved forms which were designed to reduce errors.

■ Revised Article 9 does not expressly define the errors and omissions that make a financing statement seriously misleading. The significant body of case law determining whether a financing statement was seriously misleading under old Article 9 primarily involved whether a filer used the correct debtor's name to provide notice to creditors. To answer such questions, most courts used a reasonableness standard which created "extensive litigation and fragmented or contrary decisions." *John's Bean Farm*, 378 B.R. at

389. While Revised Article 9 reduced such litigation by making a financing statement seriously misleading if it fails to sufficiently provide the name of the debtor in accordance with § 9–503, it left undefined the other errors or omissions that would make a financing statement seriously misleading. Although the "seriously misleading debtor name" cases decided under old Article 9 are not directly on point, they help guide the Court as to what errors and omissions make a financing statement seriously misleading. In that regard, "[t]he cases indicate that the filing officer is not required to look beyond the debtor box when determining the name under which to index the financing statement." *In re Walker,* 142 B.R. 482, 484 (Bankr.M.D.Fla.1992) (financing statement that listed correct debtor name on signature line but not in debtor box was seriously misleading). "[U]nless specifically included in the debtor's box, the mention of the debtor's name elsewhere in the financing statement is irrelevant." *In re Michelle's Hallmark Cards & Gifts, Inc. (Crews v. First Union Nat'l Bank of Florida),* 219 B.R. 316, 321 (Bankr.M.D.Fla.1998). Moreover, the Florida Secured Transaction Registry's website states that it "will accept and process other forms as Unapproved Forms only if the forms contain the same fields as the most recent corresponding ... Additional Party forms approved by the Florida Secretary of State." *See* www.floridaucc.com/UCCWEB/forms.aspx (last visited January 25, 2011). Regions' unapproved attachment did not contain any "fields" corresponding to the most recent additional party form, nor did it contain any additional debtor "boxes" in which to list the names of the additional debtors. Listing the additional debtors names elsewhere on an unapproved attachment is irrelevant. *See Michelle's Hallmark Cards,* 219 B.R. at 321. This error was compounded by the fact that there was no

direction in the additional debtor box on the first page of each UCC–1 to look at the attachment listing additional debtors. Thus, as in the case of the New York UCCs, the Florida UCCs were ineffective to perfect a security interest in the assets of Avstar Fuel. The Court finds that listing additional debtors on an unapproved attachment which wasn't referenced in the additional debtor box on the first page of Regions' UCCs was an error and an omission that made the financing statements seriously misleading as to Camtech and Avstar Fuel.

### III. *Indexing Errors*

 Regions maintains that its UCCs were properly filed, but that both the New York and Florida filing offices mis-indexed the UCCs. Regions argues that pursuant to NY UCC § 9–517 and Fla. Stat. § 679.517, the failure of the filing office to index a record correctly does not affect the effectiveness of the filed record. It is true that a secured party does not bear the risk of an improper filing or indexing "as long as his conduct does not lead to the error on the part of the filing officer." *McMillin v. First Nat'l Bank & Trust Co., (In re Fowler),* 407 F.Supp. 799, 803 (W.D.Ok. 1975); *see also* 10 Anderson U.C.C. § 9–403:13 (3d ed.) ("Thus the secured party does not bear the risk of an improper filing or indexing by the filing officer, as long as the secured party has not caused the error by misleading the filing officer.")(*citing In re Vaughan,* 1967 WL 8935 (Bankr. W.D.Mich.1967) ("the secured party cannot mislead the Register of Deeds by his negligence and then be absolved from any responsibility for a wrongful indexing")). Having determined that Regions' UCCs were seriously misleading as to Camtech and Avstar Fuel, the Court does not find that the filing offices made an indexing error. However, assuming *arguendo* that

both filing offices made the same indexing error, the Court would find that such error was the result of Regions' using an unapproved attachment that was not referenced in the additional debtor box on the first page of the UCC–1. While a creditor does not bear the risk of improper indexing, "[t]he filing officer has no duty to look to an area other than the debtor boxes to determine the correct name of the debtor under which to index the financing statement." *In re Walker*, 142 B.R. at 484 ("The debtor boxes were put on the financing forms to assist the filing officer in determining the name of the debtor."). Filing officers are not required to look through every page of a financing statement to ascertain the names of additional debtors, nor do they have any duty to index based on information contained in an unapproved additional party attachment that is not referenced in the additional debtor box on the first page of the UCC–1. This is not a case in which the error of the filing officer accounts for the financing statement not having been indexed as to the additional debtors. This is a case in which the filer's error in using an unreferenced and unapproved form caused the financing statements to be seriously misleading and ineffective.

## IV. Disgorgement of Adequate Protection Payments

▮ The Agreed Cash Collateral Order, entered June 22, 2010, granted Regions a replacement lien to the same extent as may have existed pre-petition. Based upon this Court's determination that Regions' UCCs were ineffective to perfect its asserted security interest in the assets of Camtech and Avstar Fuel, Regions is an unsecured creditor. As an unsecured creditor, Regions must disgorge the Adequate Protection Payments paid to Regions for use of cash collateral by Camtech and Avstar Fuel under the Agreed Cash Collateral Order.

### CONCLUSION

For the reasons stated, the Court finds that Regions' UCCs are seriously misleading and therefore ineffective to perfect a security interest in the assets of Camtech and Avstar Fuel. Regions shall disgorge all Adequate Protection Payments it received in respect of liens asserted in the assets of Camtech and Avstar Fuel pursuant to the Agreed Cash Collateral Order.

### ORDER

The Court, having reviewed the submissions of the parties, the applicable law, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. Plaintiff's Motion for Summary Judgment is **GRANTED.**

2. Regions failed to perfect its security interest in the assets of Camtech and Avstar Fuel rendering Regions an unsecured rather than a secured creditor.

3. Regions shall, within fourteen (14) days of entry of this Order, disgorge all Adequate Protection Payments Regions received pursuant to the Agreed Cash Collateral Order in respect of its asserted liens against the assets of Camtech and Avstar Fuel.

4. Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.